Walter A. WARREN, Petitioner,

v.

DEPARTMENT OF the ARMY,
Respondent.

Appeal No. 86–817.

United States Court of Appeals,
Federal Circuit.

Oct. 24, 1986.

Amy Wind, Kator, Scott and Heller, Washington, D.C., argued for petitioner. With her on the brief was Irving Kator.

Scott A. Harbottle, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan and Stephen J. McHale. Charles B. Hernicz, U.S. Army, Office of the Staff Judge Advocate, Fort McPherson, Georgia, of counsel.

Before NIES, Circuit Judge, NICHOLS, Senior Circuit Judge and ARCHER, Circuit Judge.

NICHOLS, Senior Circuit Judge.

Walter A. Warren (Warren) appeals the decision of the Merit Systems Protection Board (MSPB or board), 29 M.S.P.R. 292, sustaining the decision of the Department of the Army (DOA) at Fort McPherson, Georgia, removing him from a position as a Computer Specialist for unacceptable performance, 5 U.S.C. § 4303. The board declined to review the initial decision of its presiding official, making that decision its own. We affirm.

## Background

On April 2, 1984, Warren, then employed by the DOA Information Systems Division, was detailed to a position of like grade and title in the same division. On July 22, 1984, Warren was permanently reassigned to this position. Prior to and after his detail, Warren engaged in a variety of protected "whistleblowing" activities, including an unsuccessful lawsuit in federal court challenging the classification of his position and treatment of him by agency officials, a letter to his senator regarding merit promotions, and an equal employment opportunity complaint.

After the detail, Warren had difficulty with his new computer duties. Howard Highley, Warren's supervisor, issued a notice to Warren on December 5, 1984, warning him that his performance was unsatisfactory and allowing him 90 days in which to improve. Warren continued to have difficulty with his new assignments even after extensive instruction. Warren's removal followed on March 1, 1985.

Warren appealed his removal to the MSPB, arguing that he was not given an "opportunity to demonstrate acceptable performance," 5 U.S.C. § 4302(b)(6), and that his removal was illegal reprisal for his protected activities, 5 U.S.C. § 2302(b)(8). The presiding official sustained the DOA's removal of Warren and found that the DOA established by substantial evidence that Warren's performance was unacceptable after he was given a reasonable opportunity to improve. In regard to Warren's claim of reprisal, the presiding official found that Warren established that (1) protected activities were engaged in, (2) the accused officials knew of these activities, (3) "retaliation (adverse action) resulted"; however, (4) Warren failed to establish that the adverse action was taken in retaliation for his protected activities. The presiding official based this fourth conclusion on the substantial evidence of Warren's unacceptable performance and on Warren's failure to offer evidence of reprisal beyond coincidence in time between the adverse action and the protected activities, which the official found did not meet the requisite preponderance of the evidence. The MSPB denied review of the presiding official's opinion. Warren has appealed to this court.

## Analysis

### I

The standard of review for this court in considering an MSPB decision of this type is limited. The agency's action must be sustained unless it is found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedure required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence;

5 U.S.C. § 7703(c); *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir. 1984). The decision to dismiss a federal employee must have a "rational basis supported by substantial evidence from the record as a whole." *Van-Fossen v. Department of Housing and Urban Development*, 748 F.2d 1579, 1580 (Fed.Cir.1984). In reviewing the presiding official's decision, the MSPB and this court must "give deference to the judgment by each agency of the employee's performance in light of the agency's assessment of its own personnel needs and standards." *Lisiecki v. Merit Systems Protection Board*, 769 F.2d 1558, 1564 (Fed.Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986), *quoting* S.Rep. No. 969, 95th Cong., 2d Sess. 45, *reprinted in* 1978 U.S. Code Cong. & Ad. News 2723, 2767.

■■■ There is substantial evidence on record of Warren's unacceptable performance in critical areas of his position. There is also substantial evidence that Warren's supervisors provided him with a reasonable opportunity to improve. Based on this evidence, the decision was not arbitrary, capricious, or an abuse of discretion. Warren's unacceptable performance provides a rational basis for his removal, 5 U.S.C. § 4303(a). While he says he was not given a reasonable opportunity to adjust to the requirements of the new position, he should have learned the requisite skills in the old one for both, as it was found. Warren's contention that he was not provided a "meaningful" opportunity to improve is not supported by the record. In assessing such arguments on appeal, and in determining whether the MSPB's decision is supported by substantial evidence, the court cannot engage in a *de novo* review; rather, the court must determine whether the agency's determination is supported by substantial evidence already of record.

## II

This case would be within applicable precedents and hardly would justify extended discussion or a published opinion except for a curious quirk in the presiding official's opinion, and a still more curious use of it by the petitioner here. They indicate the existence of a problem that has not, so far as we know, surfaced previously, and may produce difficulty in future cases if not faced squarely in this one.

The board and counsel for petitioner agree that one adjudicating an adverse action in which a claim of illegal retaliation is made, must apply four tests which, as stated in *Hagmeyer v. United States*, 757 F.2d 1281, 1284 (Fed.Cir.1985), are as follows:

> In order for petitioner to prevail on his contention, [of illegal retaliation] he has the burden of showing that (1) a protected disclosure was made, (2) the accused official knew of the disclosure, (3) retaliation resulted, and (4) there was a genuine nexus between the retaliation and petitioner's removal.

The presiding official obviously had difficulty interpreting test (3) and inserted language giving it his own construction—

> (3) retaliation (adverse personnel action) resulted.

The board already knows an adverse personnel action occurred, otherwise it would not have had jurisdiction of the appeal. Except to avoid anticipating test (4), it adds nothing to say the petitioner has shown it again. Petitioner nevertheless argues (Brief, page 15):

> In the circumstances of this case, the Board's determination that respondent had retaliated against petitioner virtually requires a finding of nexus between the retaliation and the removal.

In other words, a conclusion in favor of petitioner under test (3) virtually preempts test (4). Why *Hagmeyer* prescribed two tests to determine the same thing is not explained. The presiding official obviously did not think he had preempted test (4), and added his insert in parentheses to reflect his understanding of what test (3) really meant. We think the presiding official has

assigned too narrow and insufficiently relevant a scope to test (3), and the petitioner one that is too broad and preemptive of test (4). We are therefore constrained to make our own determination of what test (3) really means. In so doing, we consider the background of the *Hagmeyer* tests in prior court and administrative decisions.

As authority for the four tests to be applied to a retaliation contention, this court in *Hagmeyer* cites only *Sullivan v. Department of the Navy,* 720 F.2d 1266, 1275 (Fed.Cir.1983). In that case the tests are word for word the same as in *Hagmeyer,* and the authority for them is given as *In re Frazier,* 1 MSPB 159, 1 M.S.P.R. 163 (1979), *aff'd,* 672 F.2d 150 (D.C.Cir.1982). The wording there found, though different, in essence is the same, but more elaborate and analytical, which was to be expected as the board was writing on a clean slate in interpreting a statute then new. The conclusion must follow that this court in *Sullivan* and *Hagmeyer* was not undertaking to reassign to the four tests exactly the tasks they were to perform, but simply to identify them so the employee's success in invoking them could be ticked off and weighed according to *Frazier.* The rationality of stating test (3) in a manner that could be construed as preempting test (4) and making it superfluous, was simply not before the court in an adversary context, and we feel free, therefore, to restate test (3), if necessary, to avoid confusion, so long as we do not misapply what was *done* in *Sullivan* and *Hagmeyer* as precedents.

■ The board in *Frazier* determined, at 1 M.S.P.R. 193, that the elements the employee must prove were the same as in a proceeding under section 704(a) of Title VII, *i.e.:*

> A violation of section 704(a) is shown when an employee (or applicant for employment) establishes that he or she engaged in activity protected by this section; that he or she subsequently was treated in an adverse fashion by the employer; and that there is a causal connection between the protected activity and the adverse action(s). * * * The causal

connection which the employee must show merely consists of an inference of retaliatory motive for the adverse employee action.

It earlier had appeared that it must be shown the "accused official" had knowledge that the protected disclosure had been made and by whom. 1 M.S.P.R. at 186. This is all, and the "existence of a genuine nexus" is not mentioned in those words as the fourth test. The board, however, noted that the statutory whistleblower protections must not be used to thwart the purpose of the Civil Service Reform Act:

> Thus an employee's claim to be a whistleblower must be carefully scrutinized to insure that whistleblowing protection is not being misused in an attempt to thwart needed disciplinary action.

1 M.S.P.R. at 165–66 n. 1.

It noted that such purposes towards the protection of whistleblowers are—

> [A] complementary, but sometimes countervailing, purpose * * *.

1 M.S.P.R. at 165–66 n. 1. *See also* 1 M.S.P.R. at 187, text and n. 33.

The District of Columbia Circuit, affirming, per Senior Judge Bazelon, formerly Chief Judge, noted these precautions or countervailing considerations with approval, and referred as sources of comparable law to such cases as *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Court in *Mt. Healthy* noted that a rule that focuses entirely on whether protected activity played a part, major or minor, in an adverse decision, "could place an employee in a better position as a result of the exercise of * * * protected conduct than he would have occupied had he done nothing." 429 U.S. at 285. We find that in the context of reprisal issues, the inquiry covers not only whether a retaliatory motive exists, but also whether there are independent grounds for initiating an action against an employee.

We conclude the interrelation of the third and fourth tests is that under test (3), if officials having knowledge of the protected disclosures, and even slight involvement in them, are in charge of advising or effectuating the removal of the whistleblower for misconduct or inadequate performance, this may justify an inference of a retaliatory motive sufficient for test (3); but then a careful scrutiny of the intensity of their motive to retaliate is necessary under test (4) to be weighed with the gravity of the misconduct charged, or inadequacy of the performance of duties, so that the trier of fact can make an informed and reasoned determination whether the "nexus" exists. As Judge Nies stated, concurring in *Sullivan*, the mere fact the agency has a good case against the employee does not win the case for the agency if the evidence shows that the motive for invoking the misconduct or inadequate performance as a reason for discharge is predominantly retaliation, making the asserted reasons pretextual and establishing the "nexus." Test (4), however, must, at times, be applied in a manner to "countervail" test (3).

Our conclusion is, if, as here, unlike *Sullivan*, a reasonable separation is maintained between any targets of the "protected disclosures" who may feel themselves personally injured by the whistleblower, and the initiating and deciding agency officials of the adverse action, and if the charges considered in the proceeding do not include the "protected disclosures" themselves, then the determination of "nexus" under test (4) will not be preempted because test (3) results in conclusions favorable to the whistleblower. Petitioner's argument for such preemption is therefore rejected. A contrary holding would undermine the intent of Congress that unsatisfactory employees should not be allowed to use "protected disclosures" to shield themselves against adverse actions that would otherwise result from their derelictions. This intent was clearly perceived in 1979, soon after passage of the Civil Service Reform Act of 1978, by one of the agencies, the MSPB, set up to administer the Act, with ample citation of legislative history, in *Frazier*, and affirmed by the court that reviewed *Frazier*, the D.C. Circuit.

The telegraphic summary of the four tests, in *Sullivan* and *Hagmeyer*, is capable of misconstruction as to test (3) as shown by the fact our petitioner has misconstrued it. We believe, to reflect the true intent of this court, test (3) should be stated as follows:

(3) The adverse action under review could, under the circumstances, have been retaliation.

The findings and conclusions of the presiding official show that this is substantially the test he applied, and therefore petitioner shows us no basis for reversal or remand. The findings reflect as to nexus that the concerns about petitioner's inadequate performance were genuine, but, as regards his transfer to more difficult tasks management allegedly knew he could not perform, which he asserts was retaliation, he complained at the time the new work was too easy for him. On the other hand, officials concerned with the transfer, and the adverse action, were not direct targets of the "protected disclosures." Petitioner argues they had indirect concerns: for their own performance records they needed an uncomplaining staff, such as petitioner assuredly was not. We suppose that among members of the management team it would often be impossible to find persons with minds as completely blank slates about a whistleblower's case as those of potential jurors are supposed to be, concerning cases they are to hear. All the law requires is their reasonable separation from the whistleblower's direct line of fire, and from the counterblasts of those the whistleblower has injured, and this is found to have existed. Any weak motive of such persons to retaliate would not be expected to override their obligation to act in good faith and uphold the law. After all, the legal independence of the MSPB is futile to take care of due process concerns if involved agency officials must also be as wholly disinterest-

ed and impartial as the MSPB must be, and is. The presiding official finds, in effect, that an imaginary supervisor who knew nothing of the whistleblowing would have been led by the objective facts to find petitioner's performance inadequate.

### Conclusion

We hold that the decisions of the presiding official and the MSPB that the petitioner's performance was unacceptable, that he was given a reasonable opportunity to improve, and that his removal was not in retaliation for his protected activities, are supported by substantial evidence and are not arbitrary or capricious, not contrary to law, nor an abuse of discretion or effected by inappropriate procedure.

AFFIRMED.

NIES, Circuit Judge, concurring.

I respectfully concur. I agree thoroughly that the *Hagmeyer* decision on the four requirements for reprisal requires clarification with respect to the meaning of "retaliation." I also agree that petitioner's interpretation eliminates part (4) of the *Hagmeyer* test. However, as I understand the majority's interpretation, the majority separates "nexus" into two parts, an inference under (3) and a conclusion under (4).

In my view, part (3) means, as stated in *Frazier*, that, *subsequent* to engaging in protected activity, the employee was treated in an adverse fashion by the employer. In other words, part (3) relates simply to the time of the adverse action. This also appears to me to be the idea in *Hagmeyer* in using the word "retaliation," which connotes an action in response to a *prior* action. In setting out a required sequence of events, part (3) has meaning apart from the fact that an adverse action is before the board. The adverse action must have occurred *after* the protected activity. Similarly, I would read "retaliation" in part (4) of the *Hagmeyer* test to mean than an adverse action occurred *subsequently*.