**Floyd J. STANEK, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

**Appeal No. 86–869.**

United States Court of Appeals, Federal Circuit.

Dec. 3, 1986.

Michael L. Spekter, Washington, D.C., for petitioner.

D.C., for respondent. On the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan, Asst. Director and Sharon Y. Eubanks. Wilbert Baccus, Federal Highway Admin., Dept. of Transp., of Washington, D.C., of counsel.

Before FRIEDMAN, Circuit Judge, NICHOLS, Senior Circuit Judge, and BALDWIN, Circuit Judge.*

NICHOLS, Senior Circuit Judge.

Petitioner Floyd J. Stanek appeals the decision of the Merit Systems Protection Board (MSPB or board), Docket No. DC07528510229, affirming his removal effective February 19, 1985, by the Department of Transportation, Federal Highway Administration (FHWA or agency) from his position as research highway engineer. The sustained charges are: unauthorized use of government property; solicitation of a loan from a person who might have benefited by Stanek's research conclusions; and advocating and promoting a highway research system that directly obstructed the FHWA program and that created a conflict of interest for Stanek. We affirm.

*Background*

Stanek was removed from his position as a research highway engineer with the FHWA effective February 19, 1985, on six grounds of misconduct, three of which were upheld by the MSPB and survive for review and discussion. The first ground upheld by the MSPB (the original charge one) was Stanek's unauthorized use of government word processing equipment and disks. This charge was based on Stanek's use of equipment for personal correspondence (3 pages) and for writing, not on official business, but related to his "whistleblowing" activities (59 pages). The next charge upheld by the MSPB (charge four of the agency's original charges) concerned a letter from Stanek to Frederic A. Lang, a patent holder for prestressed concrete, stating in detail Stanek's need for "advise

[sic] for financial assistance" to help him pay legal fees to pursue his whistleblowing activities and to help him get through his divorce. Part of Stanek's official research activities involved consideration and recommendation of different highway paving techniques. Stanek was also a strong advocate of the prestressed concrete method of highway construction. The third basis for Stanek's removal upheld by the MSPB (the agency's fifth charge) was in connection with a November 10, 1984, paper prepared by Stanek entitled "The Paradox of Highway Technology" (Paradox paper). In this paper, which Stanek distributed to officials of all 50 state highway departments, as well as to the officials of the District of Columbia and Puerto Rico, Stanek criticized the Strategic Transportation Research Study (STRS), a cooperative study administered by the Transportation Research Board (TRB) of the National Academy of Sciences (NAS) under an agreement with the FHWA and the American Association of State Highway and Transportation Officials (AASHTO). STRS was funded by a contract of the FHWA and the study's proposals have been officialy endorsed and supported by FHWA. In pages 28–30 of the Paradox paper, Stanek "invited and encouraged" state officials to deliver directly to him their listings of highway research needs. Stanek also stated in the paper that he would compile these lists for public assessment and that he would transfer the lists to an appropriate congressional committee. The agency charged that Stanek, through his Paradox paper, attempted to operate his own system for identifying and soliciting research needs and, thereby, placed himself in competition with FHWA and in conflict of interest between his official duties and his role as a private conduit and advocate for research work. Stanek argued that he had a first amendment right to issue the Paradox paper.

Prior to his removal, Stanek engaged in a variety of "whistleblowing" activities, in-

---

* The Honorable Phillip B. Baldwin assumed senior status effective November 25, 1986.

cluding a December 1982 report to the Inspector General revealing alleged improprieties in research contracting; a July 4, 1983, article in the *New York Times* containing an interview with Stanek in which he criticized the FHWA for failing to adopt the prestressed concrete method; an address to the 1982 meeting of the TRB, in which Stanek criticized a paper presented by the Portland Cement Association; testimony to a congressional committee regarding the viability of prestressed concrete; the preparation of a February 1984 paper, "Two Decades of Highway Pavement Design," prepared at the request of the congressional committee; a July 1983 letter to the Secretary of Transportation from Ralph Nader concerning prestressed concrete and concerning Stanek's reprimand; and the preparation and issuing of the Paradox paper.

### Proceedings Below

The presiding official's tentative decision became that of the MSPB by its refusal to review, and it is therefore referred to as the board's decision. The board thus upheld charges one, four, and five of the agency's original six charges, finding that these three charges were supported by a preponderance of the evidence, 5 U.S.C. § 7701(c)(1)(B). The board also found that these three charges provided cause such that Stanek's removal would promote the efficiency of the service. 5 U.S.C. § 7513(a). In regard to charge one, the board found that the agency established by a preponderance of the evidence that Stanek used government equipment to prepare private papers, in violation of federal regulation. In addressing charge four regarding Stanek's letter to Lang, the board found that, based on the wording and contents of the letter, Stanek indirectly requested a loan from Lang, an individual who has an interest in the activities of the FHWA as well as in the manner in which Stanek exercised his official duties, in violation of federal regulation. The board found that the agency's charge regarding the solicitation was supported by a preponderance of the evidence because, although technically indirect, Stanek's need for a loan was expressed clearly. The board considered charge five regarding the Paradox paper and found that a preponderance of the evidence supported the conclusion that the system advocated by Stanek would interfere directly with the regular research activities of the FHWA. The board also found that the subject of Stanek's paper was of public concern. The board balanced Stanek's interest in speaking on this issue with the agency's interest in maintaining the integrity of its research programs and management decisions. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The board concluded that the agency's interests were stronger because Stanek's system would impede the efficiency of the government, create a conflict of interest between his responsibilities as an employee and his private activities, result in Stanek's loss of impartiality as a federal employee, and result in making a government decision outside official channels.

The board then addressed Stanek's defenses and various assertions and considered Stanek's claim that he was removed in retaliation for his protected activities. 5 U.S.C. § 2302(b)(8). The board found that Stanek's Paradox paper was a protected disclosure and that, because the paper was the basis of two of the charges on which he was removed, Stanek established the "existence of a causal connection between his disclosure and his removal." The board found, however, that Stanek failed to establish evidence that retaliation for his whistleblowing was a significant factor in his removal, basing this conclusion on findings that Stanek's misconduct provided independent grounds for removal. The board cited the difficulties created by Stanek's proposed system, Stanek's misuse of government property, and the letter soliciting funds from Lang as serious offenses that independently warrant disciplinary action. The board also found that the events surrounding Stanek's various protected activities "do not disclose a pattern of reprisal from which an inference of similar treat-

ment * * * [in regard to the Paradox paper] can reasonably" be drawn. The board noted that the reprimand and suspension of Stanek after his response to the TRB papers and his mailing of the "Two Decades" paper were based on Stanek's failure to follow written directions and instructions of his supervisors, absence without leave, and misuse of government property. The board concluded that the evidence establishes that the agency would have instituted the removal action regardless of whether a retaliatory motive existed.

The board addressed Stanek's claim that the agency's denial of his request to submit evidence of psychological difficulties was harmful procedural error and concluded that Stanek failed to show a connection between his removal and his psychological problems. In addition, the board found that Stanek failed to show what additional documentation of psychological problems he would have submitted and that he did not meet his burden of showing how such evidence might have caused the agency to reach a different conclusion. The board then addressed Stanek's claim that the agency's removal of him was based on age discrimination and found that Stanek had no difficulty with his assignments in the past and, therefore, there was no motivation for removing him to replace him with a younger employee. The board concluded that there was no evidence that Stanek's age had any bearing on the removal decision.

The board then considered Stanek's challenge to the penalty imposed on him by the agency. The board found that Stanek's misconduct was serious and that the agency appropriately considered evidence of Stanek's past disciplinary record, the high likelihood that a less severe sanction would not be effective against Stanek, the poor chance that "rehabilitation" was possible, and the consistency of the penalty selected by the agency for such misconduct, and concluded that the removal of the petitioner was reasonable. *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981).

Stanek appealed the tentative decision sustaining his removal by the agency. The full board found that it did not meet criteria for review, pursuant to 5 C.F.R. § 1201.115 and denied review. Stanek has appealed to this court as per 5 U.S.C. § 7703(b)(1).

*Analysis*

I

On appeal, Stanek argues that (1) the board's failure to independently review the record was arbitrary and an abuse of discretion; (2) his unauthorized use of government property was *de minimis* and does not warrant removal; (3) his letter to Lang did not constitute a solicitation of funds from a person whose interests might be substantially affected by performance of Stanek's official duties; (4) the board did not apply the appropriate balancing test in evaluating his protected disclosures; (5) the board erroneously interpreted 5 U.S.C. §§ 2302(b)(8), (b)(9), (b)(10) and (b)(11) in discounting his defense of reprisal for protected activities; and (6) the penalty was inappropriate. We reject these contentions and hold that Stanek failed to establish grounds for reversible error.

The scope of review for this court in considering a decision of this type by the MSPB is limited. The court must uphold an agency's decision unless it is found to be:

1. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2. obtained without procedures required by law, rule, or regulation having been followed; or

3. unsupported by substantial evidence;

5 U.S.C. § 7703(c); *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir. 1984).

■ Stanek's first claim concerning exclusion at trial of evidence of his psychological problems is without merit. Based on the evidence of record, Stanek has failed to establish even the minimal connection between his psychological difficulties and his

removal to meet the test for relevance. We hold that the board's decision affirming the agency's exclusion of this evidence was not arbitrary or capricious.

■ Stanek's second and third arguments regarding use of government property and solicitation of a loan are equally without merit. The board's finding that Stanek used government equipment and material to prepare his private papers is supported by substantial evidence and largely uncontested. Stanek's use of government property might not sustain a removal action by itself and, as a practical matter, may be widely permitted in government offices. Yet, a word processor is property as valuable as an automobile, and use of a government car for personal purposes is most severely frowned upon. Such acts do violate federal regulations. More importantly, there are other far more serious offenses on Stanek's part that independently warrant his removal.

In regard to Stanek's assertion that the letter to Lang did not constitute a solicitation of funds, we note that our inquiry is limited to appellate review in which we are not the fact finders. The situation is parallel to that under Fed.R.Civ.P. 52(a), which states that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness." The Supreme Court recently reiterated its interpretation of this clearly erroneous standard:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The Court in *Anderson* also emphasized the restricted role of the appellate courts in reviewing the record as established in the trial court:

> Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342 [70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); * * *.
>
> This is so even when the district court's findings do not rest on credibility determinations, but are based instead on *physical or documentary* evidence or inferences from other facts. [Emphasis supplied.]

*Id.* at 574, 105 S.Ct. at 1512.

■ By the same logic, we must accept the MSPB's interpretation of the letter to Lang as a factual conclusion and not be tempted to say we can read it as well as the MSPB can. Although the letter expressly requested only "advice" regarding obtaining a loan, a reasonable interpretation of this, though not the only one, indicates that Stanek was looking for more than advice from Lang. Stanek's letter, in addition to violating 5 C.F.R. § 735.-202(a)(3) regarding direct solicitation of a loan, created the appearance of impropriety. *See* 5 C.F.R. § 735.201a(a) (employee shall avoid any action which might create the appearance of using public office for private gain). We hold that the text of the letter was "substantial evidence" supporting the board's interpretation. Substantial evidence must be such as would persuade a reasonable fact finder, but need not be, in our view, a preponderance. 5 U.S.C. § 706(2)(E); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Corning Glass Works v. International Trade Commission,* 799 F.2d 1559, 1566, 230 USPQ 822, 826 (Fed.Cir.1986), *quoting Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). We also agree that this solicitation, as found, was an extremely serious act of misconduct that, if tolerated, would impair the integrity of the Federal Government far more than personal use of government equipment.

## II

The more serious grounds asserted by Stanek on appeal are that his dissemination of the Paradox paper is protected by the first amendment and that his removal was in retaliation for protected disclosures. We hold that Stanek has failed to establish reversible error in either charge.

The Supreme Court, in articulating a general approach to restrictions on the right of public employees to speak has stated that:

[I]t has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. * * * Our task, as we defined it in *Pickering,* is to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), *quoting Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

In order to assess Stanek's first amendment claim, the board determined whether Stanek's paper addressed a matter of public concern and whether the interest of the agency in promoting the efficiency of the public service it performs through coherent and focused decisionmaking outweighed Stanek's first amendment interests as a citizen. Although this balancing approach relies heavily on the facts of each case, the resolution of the *Pickering* test is a legal determination. *Id.* 461 U.S. at 147 n. 7 & n. 10, 103 S.Ct. at 1690 n. 7 & n. 10.

■ In regard to the first part of our analysis, Stanek asserts, without opposition by the government, that the Paradox paper addressed a matter of public concern. Given the government's stipulation, as well as attention given highway research issues by Congress, the paper does address a matter of public concern. Stanek argues that, once he establishes that his paper dealt

with a matter of public concern, the burden shifts to the government to "clearly demonstrate" that the speech involved "substantially interfered" with the agency's operations. The Supreme Court has directly rejected this interpretation of *Pickering:*

The District Court viewed the issue of whether Myers' speech was upon a matter of "public concern" as a threshold inquiry, after which it became the government's burden to "clearly demonstrate" that the speech involved "substantially interfered" with official responsibilities. Yet *Pickering* unmistakably states, * * * that the State's burden in justifying a particular discharge *varies* depending upon the nature of the employee's expression. Although such particularized balancing is difficult, the courts must reach the most appropriate possible balance of the competing interests. [Emphasis supplied.]

*Id.* at 150, 103 S.Ct. at 1691.

■ We therefore reject Stanek's contention that the board erred as a matter of law in not requiring the agency to "clearly demonstrate" how the speech interfered with agency operations, and we now proceed to the balancing of the two interests at hand. The record establishes by substantial evidence that the STRS, the subject matter addressed in the Paradox paper, is of substantial public concern. However, given the extensive attention given to the STRS subject matter by the FHWA, Stanek's Paradox paper, which suggests an alternate course of collecting States' highway research needs, should be seen not as the disclosure of some vital new information covering an unexplored area; rather, it should be viewed as Stanek's public expression of dissatisfaction with his employer's policy choices. In *Connick v. Myers,* 461 U.S. at 150–152, 103 S.Ct. at 1691–1692, the Supreme Court addressed an analogous situation in which Myers, an assistant district attorney, circulated a questionnaire that, among other things, questioned public confidence in the judgment of her supervisors. The Court found that with this type of public questioning of supervisors' judg-

ment and where close working relationships are important to fulfilling public duties, a "wide degree of deference to the employer's judgment [regarding adverse action] is appropriate." *Id.* at 15, 103 S.Ct. at 1692. While we do characterize Stanek's paper as public demonstration of disagreement about a policy choice, we note that the general subject matter addressed by Stanek is of far greater public concern than was the internal policy of the district attorney's office in *Connick.* The agency, to overcome this finding, must establish that Stanek's paper interfered with the FHWA's program in a material way. We hold that the government has met this burden.

The evidence establishes that Stanek, through his Paradox paper, set up a private clearinghouse for state highway research needs. The evidence also establishes that the FHWA, through its various programs and affiliates, had set up its own system for collecting highway research information from the states. If you did what Stanek wanted, probably you did not do what FHWA wanted. Stanek's program directly and substantially interfered with the FHWA's program. Stanek also ignored supervisors' requests to clear all outgoing correspondence with them.

Common sense suggests that an agency cannot function correctly where an employee establishes an unauthorized quasi-official "office" that directly competes in function with an existing government program. A predecessor court noted the general rule that "[m]anagement cannot function effectively unless it operates 'with one voice' *vis-a-vis others." Brousseau v. United States,* 226 Ct.Cl. 199, 640 F.2d 1235, 1249 (Ct.Cl.1981) [Emphasis in original].

We have applied this principle as well. In *Brown v. Department of Transportation,* 735 F.2d 543 (Fed.Cir.1984), Judge Smith applied the *Pickering* analysis to an air traffic controller's public remarks at a PATCO meeting ("stay together * * * you'll win") and found that " '[c]ohesive operation of management is dependent on the loyalty of inferior management to superior management. * * * For management

to countenance disloyalty * * * would be for management to render itself impotent.' " *Id.* at 547, *quoting Brousseau,* 640 F.2d at 1249.

The court in *Brown* placed great emphasis on Brown's position as a manager in finding that his speech, although concerning a matter of public interest, interfered with the agency's interest in maintaining one coherent policy and, therefore, was not protected. *Id. See also Fiorillo v. United States Department of Justice,* 795 F.2d 1544 (Fed.Cir.1986) (petitioner's public airing of personal complaints on prison policy is not protected speech).

■ Stanek's Paradox paper system is particularly objectionable because Stanek's assertions that he would send the collected information to congressional committees was likely to entice the states to send him their information, on the belief that their needs would receive more direct priority than through official government channels. We hold, therefore, that the FHWA's interest in maintaining a coherent system of coordinating its research needs outweighs Stanek's interest in commenting publicly on STRS. We also hold that, for the reasons set out in the *Pickering* analysis, there is substantial evidence on record for the board's finding that the agency proved the required nexus between Stanek's removal and the promotion of the efficiency of the service. 5 U.S.C. § 7513(a); *Hayes v. Department of the Navy,* 727 F.2d 1535, 1539 (Fed.Cir.1984).

### III

■ Stanek contends that his removal was in reprisal for whistleblowing activities in violation of 5 U.S.C. § 2302(b)(8). There is no argument on behalf of petitioner that the choice of the initiating and deciding official was inappropriate because of their being direct targets of his whistleblowing or, as in *Sullivan v. Department of the Navy,* 720 F.2d 1266, 1270 (Fed.Cir.1983), were unduly influenced by parties seeking reprisal because of whistleblowing. In order to establish a claim of reprisal, the proponent must show that (1) a protected

disclosure was made; (2) the accused official knew of the claimant's disclosure; (3) the adverse action under review could, under the circumstances, have been retaliation; and (4) after careful balancing of the intensity of their motive against the gravity of the misconduct, a nexus is established between the adverse action and the motive. *Warren v. Department of the Army*, 804 F.2d 654 (Fed.Cir.1986); *In re Frazier*, 1 MSPB 159, 1 M.S.P.R. 163, 193–96 (1979), *aff'd*, 672 F.2d 150 (D.C.Cir.1982). The board found that Stanek established parts one through three of this analysis, as we discussed earlier, but that he failed to establish a nexus between his protected activities and his removal. We agree with the board. The evidence shows that there was no retaliatory action taken for Stanek's extensive whistleblowing activities, including his contact with the Inspector General, the *New York Times* article, the letter from Ralph Nader, or his contacts with the subcommittee. Although Stanek was removed by the agency partially on the basis of his dissemination of the Paradox paper—a protected disclosure—the board properly dismissed the charge directly based on that paper, an appropriate recognition of its protected status. But this paper provided independent actionable grounds for removal because of the conflict Stanek created between his system and the FHWA's research collection system. In addition, the two other charges against Stanek regarding his solicitation of funds and his misuse of government property did not involve protected disclosures. We hold that the board properly concluded that Stanek did not establish a claim of reprisal.

IV

█ The final consideration in addressing Stanek's challenge to the board's decision is the appropriateness of the penalty imposed on him. We note that considerable discretion is afforded to the employing agency in assessing the degree of penalty for misconduct. *Schapansky v. Department of Transportation*, 735 F.2d 477, 484 (Fed.Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984); *Nagel v.*

*Department of Health and Human Services*, 707 F.2d 1384, 1387 (Fed.Cir.1983). In *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280, 302 (1981), the MSPB held that it has the authority to mitigate a penalty when it is:

[C]learly excessive in proportion to the sustained charges, violates the principle of like penalties for like offenses, or is otherwise unreasonable under all the relevant circumstances.

The Federal Circuit, after considering these factors, has decided that the court will not disturb a choice of penalty within the agency's discretion unless the severity of its action appears totally unwarranted in light of all relevant factors. *DeWitt v. Department of the Navy*, 747 F.2d 1442, 1445 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985). The board, in upholding the penalty imposed by the agency on Stanek, appropriately considered the *Douglas* factors and found that Stanek's removal would promote the efficiency of the service. 5 U.S.C. § 7513(a). We agree. There is substantial evidence on record that the charges were very serious, that Stanek ignored various warnings and reprimands by his supervisors regarding his unauthorized activities and, therefore, that an additional reprimand or suspension would be insufficient to deter Stanek from repeating his conduct. It is easy to imagine how long a General Motors engineer would last if he repeatedly proclaimed to press and public his opinion that Chrysler cars were superior. It is only in government that activities, potentially disruptive and destructive of morale, enjoy the protection they do under law but, as shown above, we follow our highest court in recognizing that a line must be drawn somewhere. We also note that the board found the penalty imposed to be consistent with the agency's penalty tables. On the evidence, we hold that the penalty imposed on Stanek is warranted.

*Conclusion*

We hold that the board's decision upholding Stanek's removal for misuse of govern-

ment property, solicitation of a loan from Lang, and dissemination of the Paradox paper had a rational basis and is supported by substantial evidence. We also hold that the board's decision is not arbitrary, capricious, or not in accordance with law, and did not violate due process requirements.

AFFIRMED.

BALDWIN, Senior Circuit Judge, concurring.

I agree that the penalty of removal would be justified on the charge of solicitation of a loan from a person who might have benefited by Stanek's research conclusions. I am concerned that the board and majority fail to recognize an element of reprisal in this case.

The agency has apparently conceded that Dr. Stanek had completed his work assignments in a capable fashion. Dr. Stanek was reprimanded for failure to follow written directions and instructions from his supervisors. Those written directions and instructions were to stop engaging in formal discussion of the prestressed pavement papers presented at TRB Session 45. He was suspended for mailing the "Two Decades" paper, which had been prepared at the request of a congressional committee, in franked envelopes. The record is unclear as to whether the AWOL charges were associated with Dr. Stanek's appointments for psychological counseling. The present charges of misuse of government property and solicitation were brought after Dr. Stanek's computer files were confiscated and searched in response to publication of the Paradox Paper. There can be no doubt that at least some of the agency action has been in response to Dr. Stanek's protected activity.

Solicitation of a loan as Dr. Stanek did, however, is not a protected activity. It is intolerable activity and removal is the appropriate response.