99 F.3d 1160
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Kirby N. WOODWARD, Petitioner,
v.
DEPARTMENT OF THE NAVY, Respondent.
 96-3180
 United States Court of Appeals, Federal Circuit.
 Oct. 18, 1996.
 
 Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.
 RADER, Circuit Judge.
 
 
 1
 Kirby N. Woodward appeals his separation by a reduction in force (RIF) from the position of Physical Science Technician, GS-1311-10, at the Portsmouth Naval Shipyard, Portsmouth, New Hampshire. Because the Merit Systems Protection Board (Board) properly affirmed the Department of the Navy's (Navy) decision to separate Mr. Woodward by RIF, this court affirms.
 
 BACKGROUND
 
 2
 Mr. Woodward was employed as a Physical Science Technician from July 1985 until July 1994. On March 29, 1994, the Department of the Navy informed Mr. Woodward that he would be separated by RIF effective July 29, 1994. Mr. Woodward was not reached for separation in the first round of the RIF because no GS-10 Physical Science Technician position was targeted for abolishment. In the second round, he was separated because a GS-11 Physical Science Technician, who was reached in the first round, exercised his "retreat" option under 5 C.F.R. § 351.701(c). Two additional employees, listed above Mr. Woodward on the retention roster, were also reached for separation by retreating employees.
 
 
 3
 Mr. Woodward filed an appeal from that action on August 12, 1994, with the Board. He stipulated before the Board that the Navy initiated the RIF due to a projected decrease in work at the shipyard, and that it properly applied the RIF regulations with respect to establishing his competitive area, competitive level, and retention group/subgroup. In an initial decision on October 10, 1995 the Board affirmed the Navy's action. The Board denied Mr. Woodward's petition for further review, and the initial decision became final on February 15, 1996.
 
 STANDARD OF REVIEW
 
 4
 In reviewing a decision of the Board, this court examines the record to determine whether the Board's findings are arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence and whether the Board and the Navy followed proper procedure. 5 U.S.C. § 7703(c)(1994); Cheeseman v. Office of Personnel Management, 791 F.2d 138, 140 (Fed.Cir.1986). Mr. Woodward bears the burden to establish any deficiencies in the administration record. Cheesman, 791 F.2d at 140.
 
 DISCUSSION
 
 5
 On appeal, Mr. Woodward, alleges that his separation under the RIF was improper. First, he contends the Navy's use of an unapproved performance appraisal system and its inconsistent application of rating criteria among employees improperly lowered his standing on the retention roster. Mr. Woodward alleges that this lower standing caused him to be separated, while other employees with less actual seniority were retained. Second, he contends that his separation by RIF was in reprisal for his whistleblowing activities.
 
 Performance Appraisal System
 
 6
 The Navy is required to implement RIFs pursuant to the policies of the Office of Personnel Management. 5 U.S.C. §§ 1302, 3502 (1994). OPM requires agencies to create a retention roster, listing employees in order of their retention seniority. See 5 C.F.R. § 351.501 (1996). To determine retention seniority, the Navy must first determine an employee's service computation date, which reflects an employee's length of Government service. See 5 C.F.R. § 351.503. Then, an adjusted service computation date is computed which reflects the awarding of additional years of service credit based on the employee's three most recent annual performance ratings. See 5 C.F.R. § 351.504. The performance appraisal system used to adjust service computation dates must be approved by OPM. See 5 C.F.R. Part 430, Subpart B; see also Haataja v. Department of Labor, 25 M.S.P.R. 594, 604 (1985).
 
 
 7
 The Navy submitted the Basic Performance Appraisal Program (BPAP) to OPM for approval in 1980, and OPM officially approved BPAP on October 8, 1980. However, in November 1987, the Navy issued a notice that it was replacing BPAP with the Performance Appraisal Review System (PARS). This notice contained a caveat that states "PARS must be implemented consistent with the union's right to notification and bargaining, as appropriate." The pertinent question, therefore, is whether BPAP was an OPM-approved performance appraisal system during the 1991-1993 rating cycles that were used to adjust service computation dates prior to the RIF.
 
 
 8
 The fact that OPM approved PARS does not mean that BPAP was no longer an approved system under the criteria of 5 C.F.R. Part 430, Subpart B. An agency can have more than one approved performance system. See 5 U.S.C. § 4302 (1994) ("Each agency shall develop one or more performance appraisal systems."). The Navy specifically approved delayed implementation to allow for negotiation and bargaining with the unions. There is no evidence that OPM withdrew its approval of BPAP when it approved PARS, or at any time prior to the RIF. Further, employees had sufficient notice that the BPAP system was still being used for performance appraisals at Portsmouth Naval Shipyard, so that no employees were unfairly disadvantaged. Mr. Woodward's complaint about the inconsistent application of certain BPAP rating factors clearly showed his awareness of its continued use. Thus, the administrative judge did not err in finding that BPAP was an approved performance appraisal system.
 
 Standing on the Retention Roster
 
 9
 Mr. Woodward next contends that the Navy's inconsistent application of the training element of the performance standards unfairly prejudiced his standing on the retention roster. To challenge the Navy's application of performance standards before the Board, Mr. Woodward was required to identify an employee or employees in his competitive level who have a later service computation date than himself and who he believes were improperly accredited additional service credit for performance, or that he was improperly denied additional service credit. See Haataja, 27 M.S.P.R. at 603. Additionally, he must show that this affected his retention standing. Id.
 
 
 10
 In order for Mr. Woodward to have retained his position, he needed to have been listed at least fourth from the bottom of the retention roster, as the three employees listed at the bottom of the roster were reached for separation. Thus, Mr. Woodward had the burden of showing that he was denied additional performance credit, so as to increase his position on the retention roster by three places, or that at least three of his co-workers received additional performance credit. Mr. Woodward failed to show any performance rating period in which a rating of Outstanding in this Training element would have affected his overall rating. In addition, Mr. Woodward was only able to show one employee, Mr. Leroux, whose standing would have been different had he not received an allegedly unjustified Outstanding rating on the Training element. Thus, the administrative judge did not err in finding that the allegedly inconsistent application of Training element ratings did not affect Mr. Woodward's separation in this RIF.
 
 Reprisal for Whistleblowing Activities
 
 11
 Finally, Mr. Woodward alleges that his separation by RIF was in reprisal for whistleblowing activities. The administrative judge was correct in finding that Mr. Woodward failed to meet his burden of showing that the RIF was a "personnel action" within the meaning of the Whistleblower's Protection Act. Thus, Mr. Woodward must show that (1) he engaged in a protected activity; (2) the accused officials knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; (4) and there was a genuine nexus between the alleged retaliation and the adverse action. Warren v. Department of Army, 804 F.2d 654, 656-57 (Fed.Cir.1986). Even assuming that Mr. Woodward could meet the first two elements of the Warren standard, he failed to show that he could meet the third and forth elements. Mr. Woodward stipulated that the RIF was initiated for legitimate reasons. Further, no Physical Science Technician positions were slated for abolishment and Mr. Woodward was only separated because his position was taken by "retreating" employees. Under the circumstances, the administrative judge did not err in finding that Mr. Woodward's separation was not based on retaliation.