Robert R. CURTIS, Petitioner,

v.

DEPARTMENT OF COMMERCE,
Respondent.

No. 02–3382.

United States Court of Appeals,
Federal Circuit.

June 5, 2003.

Before RADER, BRYSON, and GAJARSA, Circuit Judges.

PER CURIAM.

Petitioner, Mr. Robert R. Curtis, appeals the decision of the Merit Systems Protection Board (Board) denying his petition for review and affirming the Department of Commerce's (Commerce or agency) decision to remove Mr. Curtis from his position with the government. *Curtis v. Dep't Commerce*, No. DC–0752–01–0627–I–1, 2002 WL 1466606 (M.S.P.B. July 1, 2002). Because the Board's decision is supported by substantial record evidence, is not an abuse of discretion, and is not contrary to controlling law, this court *affirms*.

## I.

Mr. Curtis was employed as a Contract Specialist, GS–1102–12, in the Office of Finance and Administration (OFA) of the National Oceanic and Atmospheric Administration (NOAA). NOAA is a bureau within Commerce. On November 17, 2000, Mr. Curtis, who had fifteen years of good service, destroyed his building identification card and stated that he was voluntarily resigning from his position at the OFA. Mr. Curtis notified his superiors via e-mail that he was resigning. At the time of his resignation, Mr. Curtis was on approved leave through November 29, 2000.

Mr. Curtis did not report for work between November 30, 2000, and December 4, 2000. Because Mr. Curtis was ill, his supervisor agreed via telephone on December 5, 2000, to allow Mr. Curtis to remain at home through December 14, 2000, utilizing a combination of regular pay, annual leave and sick leave.

On December 20, 2000, Mr. Curtis told the OFA that he no longer intended to resign, but wished to keep the option open. The OFA informed Mr. Curtis that he was considered Absent Without Leave (AWOL) as of December 15, 2000, and that his status would not change until he properly requested leave. The following day, Mr. Curtis was sent a memorandum instructing him to return to work on January 2, 2001. The memorandum informed Mr. Curtis that absent his resignation, Mr. Curtis continued to be in AWOL status, which could lead to disciplinary action. Mr. Curtis responded to the memorandum on December 29, 2000, by requesting indefinite leave without pay (LWOP) until "the serious legal issues" he raised "regarding ... procurement and EEO concerns" could be "fully addressed in the appropriate legally binding forums." Mr. Curtis' request was denied via a letter dated January 16, 2001, which informed Mr. Curtis that the LWOP status would be granted only if justified by medical evidence of his inability to work. Mr. Curtis was instructed to return to work on January 22, 2001, or face disciplinary action for being AWOL.

On February 6, 2001, Mr. Curtis was sent a second letter reminding him of his AWOL status, and that failure to return to work could result in disciplinary action, such as his removal from the agency. Mr. Curtis responded on February 17, 2001, by once again requesting LWOP status. Mr. Curtis implied his return to work was conditioned upon the agency's "complete acceptance of the terms and conditions I have clearly stated."

On April 6, 2001, the OFA proposed removing Mr. Curtis from his position at the agency due to his absence without leave, and failure to follow leave procedures. The charging specification noted that Mr. Curtis, had been in AWOL status since December 15, 2000, despite three notifications that remaining in such a status could result in disciplinary action by

the agency. The specification also noted that Mr. Curtis had requested LWOP, but did not provide documentation supporting his inability to return to work. Mr. Curtis was sent a notice of proposed removal explaining these reasons for his termination.

Commerce sustained the proposed removal notice on May 25, 2001, noting that Mr. Curtis, despite being informed of the consequences of his absence from work, did not report for duty or submit acceptable requests for leave. In making its determination, Commerce considered Mr. Curtis' fifteen years of service, lack of disciplinary actions in the past, and Mr. Curtis' successful performance evaluations. However, Commerce ultimately determined that Mr. Curtis' actions negatively impacted the efficiency of the OFA office because Mr. Curtis' workload had to be reassigned to other employees during his indefinite period of absence.

Mr. Curtis appealed his removal to the Board, arguing the agency removed him in response to his whistleblowing activities. The administrative judge determined that Mr. Curtis was absent from work without authorization beginning December 15, 2000, and that Commerce did not abuse its discretion by denying Mr. Curtis' request for LWOP "for an indefinite period with no foreseeable end." The administrative judge also found that Mr. Curtis did not adequately show that he made a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8), or that any such disclosure contributed to his removal. The initial decision of the administrative judge became final on July 1, 2002, when the Board denied Mr. Curtis's petition for review. Mr. Curtis petitions this court for review, which has jurisdiction to consider his case under 28 U.S.C. § 1295(a)(9).

## II.

This court cannot set aside the decisions of the Board unless found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; obtained without procedures required by law, rule or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2002); *Mendoza v. Merit Sys. Prot. Bd.,* 966 F.2d 650, 653 (Fed.Cir.1992) (en banc). Therefore, unless the Board's denial of Mr. Curtis' petition for review is tainted in view of at least one of these criteria, this court will not disturb the Board's decision.

## III.

To sustain its removal, Commerce was required to prove three elements: (1) that the charged conduct occurred; (2) a nexus between the conduct and the efficiency of the service; and (3) that the penalty imposed was reasonable. *See* 5 U.S.C. § 7513(a)(2000); 5 U.S.C. § 7701(c)(1)(B); *Pope v. United States Postal Serv.,* 114 F.3d 1144, 1147 (Fed.Cir. 1997). Mr. Curtis does not dispute that he was absent from his duty station without leave beginning December 15, 2000. The Board accepted Commerce's determination that Mr. Curtis' continued unauthorized absence severely impacted the efficiency of the OFA. The Board also found that Mr. Curtis elected to remain absent from work after being informed that he was in AWOL status, and after his request for indefinite LWOP was denied. Mr. Curtis was repeatedly notified that his continued absence could result in disciplinary action, such as removal. The Board noted that Mr. Curtis' removal was reasonable "[g]iven the seriousness of the appellant's misconduct" and accepted that the penalty imposed was consistent with the agency's table of penalties. The record indicates Commerce met its evidentiary burden for removing Mr. Curtis. Therefore, the

Board's determination is supported by ample evidence of record.

■ Mr. Curtis contends that his removal was due, in part, to his whistleblowing activities. Agency reprisal for an employee's whistleblowing activities, i.e. a disclosure that the employee reasonably believes evidences gross mismanagement, a gross waste of funds, an abuse of authority, or a violation of any law, rule, or regulation, is statutorily barred. *See* 5 U.S.C. § 2302(b)(8). To prevail on an allegation of illegal reprisal for exercising grievance rights under 5 U.S.C. § 2302(b)(8), Mr. Curtis must show: (1) that he filed a grievance protected under the statute; (2) that the accused official(s) knew of the grievance; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the grievance. *See Warren v. Dep't Army,* 804 F.2d 654, 656–58 (Fed. Cir.1986).

■ Indeed, the record indicates that Mr. Curtis filed a discrimination complaint against his supervisor. Record evidence also indicates Mr. Curtis contacted the Office of Inspector General, the Federal Bureau of Investigation, the Government Accounting Office, and members of Congress regarding allegedly improper contracting activities within NOAA. The Board found, however, that while Mr. Curtis' superiors at OFA knew Mr. Curtis filed a discrimination complaint and contacted the Office of Inspector General, the substance of these complaints was not known to these individuals. Therefore, the Board concluded that even if Mr. Curtis made a protected disclosure, Mr. Curtis did not show that his superiors knew of the subject matter disclosed and factored that information into the decision to remove Mr. Curtis from his position at OFA. Despite the voluminous facts discussed by Mr. Curtis in his brief, Mr. Curtis has not pointed to any legal error in the Board's determination, and this court finds none.

Because the Board's decision to deny Mr. Curtis's petition for review is supported by substantial evidence, is not an abuse of discretion, and is not contrary to controlling law, this court affirms.