NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

06-3134

JIMMY L. STROZIER,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

———————————————

DECIDED:  June 29, 2006

———————————————

Before RADER, SCHALL, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.


DECISION

Jimmy L. Strozier petitions for review of two final decisions of the Merit Systems Protection Board ("Board").  One decision, <u>Strozier v. United States Postal Service</u>, No. DE0752030183-I-2, slip op. (M.S.P.B. Oct. 31, 2003) ("<u>Enforced Leave Decision</u>"), denied Mr. Strozier's challenge to the Postal Service placing him on enforced leave from his position as a Mail Processing Clerk.  The other decision, <u>Strozier v. United States Postal Service</u>, No. DE0752030351-I-1, slip op. (M.S.P.B. Nov. 3, 2003)

("Removal Decision"), denied Mr. Strozier's challenge to the Postal Service removing him from the same position.   We affirm.

DISCUSSION

I.

Beginning July 4, 1998, Mr. Strozier was employed by the Postal Service at its Processing and Distribution Center in Colorado Springs, Colorado.   Enforced Leave Decision, slip op. at 2.[1]   Although Mr. Strozier passed a physical examination prior to being hired as a 10-point disabled veteran, which examination found that he was then physically able to perform all of the duties of a mail processing clerk, he began having serious physical problems relatively soon after being hired.   Id.   These problems affected Mr. Strozier's legs, feet, and back, inhibiting his ability to stand.   Id.

In due course, Mr. Strozier reached an agreement with the Postal Service. Pursuant to the agreement, he relinquished his position and requested a temporary light duty assignment.   Id.   He was immediately placed into a temporary light-duty position from February 22, 2002, until February 27, pending updated medical documentation. Id.   The updated medical report submitted by Mr. Strozier was signed by a medical doctor in the Department of Veterans Affairs.   Mr. Strozier was diagnosed as suffering from: (1) deteriorating ligaments and other degenerative joint disease ("DJD") in his right knee; (2) a lump in his left Achilles' tendon; (3) DJD in his left knee; (4) lumbar scoliosis; (5) flat feet; and (6) back arthritis on the right side of his spine.   Id., slip op. at 2-3.   Upon reviewing Mr. Strozier's medical documentation, a medical doctor employed by the

---

[1]   The Board stated that it was undisputed that "[a]t all pertinent times, [Mr. Strozier] was employed as a Mail Processing Clerk . . . ."   Id.   Mr. Strozier contends that he was reassigned from the position of Distribution Clerk.   As discussed below, the Board found that no substantive reassignment occurred.

Postal Service's Medical Unit determined that Mr. Strozier should have the following permanent physical restrictions: (1) he could not lift over 20 pounds at all; (2) he could lift between 0 and 10 pounds for 4 hours intermittently; (3) he could lift between 10 and 20 pounds for 2 hours intermittently or 1 hour constantly; (4) he could stand up to 2 hours intermittently, but not more than 30 minutes at any one time; (5) he could walk up to 2 hours intermittently, but not for more than 30 minutes at any one time; he could squat up to 30 minutes per day; he could drive up to 4 hours per day intermittently or 2 hours constantly; and (8) he required a chair with lumbar support when sitting. Id., slip op. at 3.

Based upon the Medical Unit's report, Mr. Strozier was nominated for reasonable accommodation consideration by the District Reasonable Accommodation Committee ("DRAC"), which asked him to supplement his medical documentation for further review. Id. On June 17, 2002, Mr. Strozier participated by telephone in a DRAC proceeding discussing his request for reasonable accommodation. Id. Mr. Strozier informed DRAC that none of his major life activities was affected by the medical conditions and accompanying restrictions noted in the most recent medical report. Id. Because of the absence of any medical or other information that his job limitations substantially affected any major life activities, DRAC concluded that Mr. Strozier was not covered by the Rehabilitation Act of 1973, and thus not eligible for reasonable accommodation. Id., slip op. at 3-4. Accordingly, Mr. Strozier was informed that he had three options: apply for other positions for which he would qualify medically and otherwise; seek disability retirement; or resign. Id.

On or about June 28, 2002, Mr. Strozier notified DRAC that he had elected to apply for other positions. Id. DRAC notified Mr. Strozier that he had six weeks to obtain a position that fell within his physical restriction. Id. DRAC also notified him that should he fail to find a position within that time, he would be given an additional ten days to elect resignation or disability retirement. Id. Mr. Strozier failed to bid for any positions within the six week period and failed to notify his superiors or DRAC that he was electing resignation or disability retirement. Id. Consequently, on September 11, 2002, Mr. Strozier was given a notice of proposed placement on enforced leave. At the same time, he was placed on administrative leave pending the submission of medical documentation demonstrating that he was physically able to return to full duty, or pending his election of resignation or disability retirement. Id. Mr. Strozier did not respond to this notice.

The Board found that as of September 17, 2002, Mr. Strozier ceased coming to work altogether, although he conceded that there was still useful work that he could have performed for the Postal Service. Removal Decision, slip op. at 4. Mr. Strozier was placed on enforced leave on November 8, 2002. Id. On December 10, 2002, and January 14 and January 17, 2003, Mr. Strozier was sent notices to report for a due process meeting (also known as an investigative interview) concerning his absence from work. Id., slip op. at 5. Mr. Strozier attended the meeting, held on January 27, and was represented by a union steward. Id. Mr. Strozier refused to cooperate or answer any questions during the meeting, despite the union steward's guidance to the contrary. Id.

On March 14, 2003, Mr. Strozier was issued a notice of proposed removal for failure to perform the requirements of his position due to medical inability to perform. Id. Given that he did not respond to the notice, the Plant Manager issued a decision removing Mr. Strozier on May 25, 2003. Id.

## II.

We have jurisdiction over appeals from the Board under 28 U.S.C. § 1295(a)(9). The decision of the Board will be affirmed unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

The Board found that the Postal Service demonstrated by a preponderance of the evidence that Mr. Strozier was properly placed on enforced leave pending resolution of his medically-based employment problems. Mr. Strozier alleges, however, that he was hired as a Distribution Clerk, in which position he served until February of 2002. He asserts that, at all relevant times, he could perform all of the duties of that position without a need for accommodation. From there, he appears to argue that, in February of 2002, he was assigned to serve as a Mail Processing Clerk and that he was not physically capable of performing the duties of that position. He charges that the Postal Service knew that his disabilities prevented him from performing these new duties and that he was assigned to the Mail Processing Clerk position as retaliation for filing discrimination complaints. He contends that he should have simply been returned to his prior job as a Distribution Clerk, which was similar to his temporary light duty assignment. Accordingly, he asserts that it was unreasonable for the Postal Service to

06-3134 5

instruct him to choose between bidding for another position,[2] disability retirement, and resignation.

It appears that after considering Mr. Strozier's argument that his job within the Postal Service was changed in retaliation, the Board found that no such change of job occurred. The Board expressed as a factual finding: "The following salient facts are undisputed unless otherwise stated. At all pertinent times, the appellant was employed as a Mail Processing Clerk . . . . The appellant had been employed by the agency since July 4, 1998." Enforced Leave Decision, slip op. at 2. We cannot say that substantial evidence does not support that finding. The Notification of Personnel Action that accompanied Mr. Strozier's change in title stated, "[A]ll distribution clerk has the same change it's just a name change from Distribution Clerk to Mail Processing Clerk. Everyone still has their bid assigned job."

Because Mr. Strozier had not served five years in the Postal Service, he was not eligible for permanent reassignment under Section 2(b) of Article 13 of the applicable collective bargaining agreement. Moreover, it is noteworthy that Mr. Strozier informed DRAC that none of his major life activities was affected by the medical conditions and accompanying restrictions noted in his medical report, thus making him ineligible for a reasonable accommodation under the Rehabilitation Act of 1973. See Enforced Leave Decision, slip op. at 3. Nonetheless, Mr. Strozier failed to suggest any reasonable accommodation that would have enabled him to perform the core functions of his position. Under these circumstances, we see no error in the Board's conclusion that placing Mr. Strozier on enforced leave was reasonable. Id., slip op. at 6.

---

[2] Mr. Strozier asserts that he was not qualified for any of the posted positions.

III.

The Board also determined that the Postal Service demonstrated by a preponderance of the evidence that Mr. Strozier was properly removed for failure to perform the requirements of his position based on medical inability to perform. We see no error in this ruling. It is undisputed that Mr. Strozier was only capable of performing a fraction of the duties of a Mail Processing Clerk. The Board aptly noted that Mr. Strozier ceased reporting to work at all after September 17, 2002, even though he conceded that there was still useful work that he could have performed for the Postal Service. Removal Decision, slip op. at 4. Furthermore, the Board observed that Mr. Strozier was given many opportunities to present evidence of improvement of his physical condition enabling him to perform a percentage of his duties as a Mail Processing Clerk. Id., slip op. at 7. In short, the Board did not err in finding that Mr. Strozier was properly removed based on his failure to perform the requirements of his position based on medical inability to perform.

Additionally, the Board determined that Mr. Strozier failed to demonstrate by a preponderance of the evidence that the Postal Service's actions, placing him on enforced leave and removing him, were taken in reprisal against him for filing discrimination complaints. It was undisputed that Mr. Strozier satisfied three of the four requirements to demonstrate a reprisal claim in accordance with Warren v. Department of the Army, 804 F.2d 654, 656-58 (Fed. Cir. 1986)—namely that by filing discrimination complaints, he engaged in a protected activity within the meaning of 5 U.S.C. § 2302(b)(9), that he was adversely affected by an agency personnel action that could, under the circumstances, have involved retaliation, and that the agency officials

responsible for the adverse action, who proposed and decided the adverse actions, had either actual or constructive knowledge of his protected activity. However, the Board found that Mr. Strozier failed to satisfy the fourth requirement—showing a causal connection between his protected activity and his placement on enforced leave. Enforced Leave Decision, slip op. at 7; Removal Decision, slip op. at 8. The Board was correct that Mr. Strozier presented no evidence that his placement on enforced leave and subsequent removal constituted a reprisal for his discrimination complaints other than his unsubstantiated subjective opinion. The Board's finding that the adverse actions were taken because of legitimate business reasons is supported by substantial evidence.

Finally, the Board found that the Postal Service demonstrated that taking disciplinary action against Mr. Strozier was for the "efficiency of the service" in accordance with 5 U.S.C. § 7513(a) and that placing him on enforced leave and ultimately removing him were appropriate remedies. This finding logically flows from a consideration of the undisputed fact that Mr. Strozier is not physically capable of performing the primary duties of his position. Therefore, the Postal Service's decisions to place Mr. Strozier on enforced leave and subsequently remove him were reasonable under all the facts and circumstances of the case.

For the foregoing reasons, the two final decisions of the Board are affirmed.

Each party shall bear its own costs.