## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LANCE MCDERMOTT,
        Appellant,

      v.

UNITED STATES POSTAL SERVICE,
        Agency.

DOCKET NUMBER
SF-0752-13-0633-I-1

DATE: October 13, 2015

# THIS ORDER IS NONPRECEDENTIAL[1]

Lance McDermott, Seattle, Washington, pro se.

Steven B. Schwartzman, Esquire, Seattle, Washington, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## REMAND ORDER

¶1     The appellant has filed a petition for review of the initial decision, which affirmed his placement on enforced leave. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2    The appellant holds the position of Maintenance Mechanic. Initial Appeal File (IAF), Tab 2 at 1, Tab 21 at 10-13. Among other things, the physical requirements of the position include the ability to distinguish colors. IAF, Tab 21 at 13. In February 2013, the agency requested that the appellant submit medical documentation relating to his vision after he claimed he was unable to differentiate some colors. *Id*. at 14. Subsequently, the appellant provided medical documentation from an optometrist, Dr. A.L., indicating that the appellant "exhibits red green colorblindness." *Id*. at 15.

¶3    In March 2013, the agency asked the appellant if he wanted to request accommodation for his vision, but he informed the agency that he did not want to participate in the reasonable accommodation process. *Id*. at 17. The agency again attempted to engage the appellant in the reasonable accommodation process in April 2013, expressing concern that his inability to distinguish colors could pose a safety hazard for himself and others, particularly concerning the wiring of equipment. *Id*. at 18. The appellant did not respond. *See id*. at 18, 20.

¶4    In May 2013, the agency's Manager, Maintenance Operations, D.M., proposed placing the appellant on enforced leave because the agency was "unable to determine that [he] can work safely due to [his] color blindness and repeated attempts to engage [him] have been unsuccessful." *Id*. at 20-21. The proposal again informed the appellant that he could request light duty or reasonable accommodation. *Id*. at 20. After the appellant failed to respond within the time provided for doing so, the agency's Manager, Maintenance Lead, J.N., issued a decision placing the appellant on enforced leave. *Id*. at 22-24. The decision letter noted that the action was a result of the appellant's refusal to interact with management concerning his vision and that he still could request light duty or reasonable accommodation. *Id*. at 22.

¶5    The appellant filed a Board appeal, challenging his placement on enforced leave. IAF, Tab 2 at 3, 5. After holding the requested hearing, the administrative

judge affirmed the agency's action, as modified.  IAF, Tab 52, Initial Decision (ID).  She found that the agency met its burden concerning proof of the charge, nexus, and penalty, ID at 9-13, 21-23, and that the appellant failed to prove his affirmative defenses, ID at 13-21.  However, the administrative judge modified the start of the enforced leave by 8 days to account for the agency improperly shortening the appellant's statutory right to advance notice by that amount.  ID at 23-25; *see* 5 U.S.C. § 7513(b)(1).  The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The agency has not filed a response.

The agency met its burden of proving the charge but remand is required for further adjudication of two of the appellant's affirmative defenses.

¶6        The appellant presents a number of allegations that implicate the administrative judge's fact findings regarding the agency's charge and his affirmative defenses.[2]  *Id*. at 7-31.  Because the appellant is pro se, we have construed his petition liberally.  *See Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 97 (1989) (discussing that a pro se appellant's pleadings are to be liberally construed), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table).  We find that the agency proved its charge.  However, we also find that the administrative judge failed to address the appellant's affirmative defense of reprisal for engaging in protected union activity.  We further find that the appellant's affirmative defense of reprisal for engaging in equal employment opportunity (EEO) activity should be reconsidered in light of our recent decision, *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015).

---

[2] Because the appellant has presented no substantive arguments concerning nexus or penalty, we will not revisit the administrative judge's well-reasoned findings as to the same.  ID at 21-23; *see Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (holding that there is no reason to disturb the administrative judge's conclusions when the initial decision reflects that she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *cf. Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 18 (2014) (finding that the traditional mitigating factors applicable to conduct-based adverse actions do not apply to those based on a physical inability to perform).

*The agency proved its charge.*

¶7       An agency's placement of an employee on enforced leave for more than 14 days constitutes an appealable suspension within the Board's jurisdiction.  *See Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 10 (2014); *see also* 5 U.S.C. § 7512(2).  To sustain such a suspension, the agency must prove by preponderant evidence that the charged conduct occurred, a nexus exists between the conduct and the service efficiency, and the penalty is reasonable.  *Abbott*, 121 M.S.P.R. 294, ¶ 10.

¶8       The agency did not provide a label for its charge, but described the basis of its action as its inability to determine whether, in light of the appellant's medical condition of colorblindness, he could perform the essential functions of his position in a safe manner, with or without accommodation.  IAF, Tab 21 at 22; *see Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997) (noting that an agency is not required to affix a label to a charge, but may simply describe actions that constitute misbehavior in narrative form in its charge letter).  We thus determine that the agency was required to prove that it was unable to determine whether there was a high probability, given the nature of the work involved, that the appellant's condition might result in injury to himself or others.  *Cf. Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 11 (2014) (providing that if an appellant does not occupy a position subject to medical standards, physical requirements, or medical evaluation programs, one way an agency may prove a charge of physical inability is by proving a high probability, given the nature of the work involved, that the medical condition may result in injury to the appellant or others).  Although the Board will consider whether a reasonable accommodation exists that would enable an employee to safely and efficiently perform the core duties of the position, the employee must cooperate in the agency's reasonable accommodation efforts.  *See id.* ¶¶ 11-12, 15, 19.

¶9       The appellant alleges that the administrative judge failed to properly consider the fact that his colorblindness existed when he was hired in 1996 and

never caused an accident. PFR File, Tab 1 at 7-8. However, it is undisputed that his position description requires the ability to distinguish colors to perform electrical maintenance work. IAF, Tab 21 at 10-13. It also is undisputed that the appellant has difficulties distinguishing between some colors. The appellant's optometrist diagnosed him with red/green colorblindness, *id*. at 15, while the appellant testified that he mixes up greens, browns, blues, and purples, Hearing Compact Disc (HCD) (testimony of the appellant).

¶10    The agency repeatedly tried to engage the appellant about associated safety concerns, but he refused to respond. *See, e.g.*, IAF, Tab 21 at 17-21. Accordingly, we agree with the administrative judge's conclusion that the agency proved its charge. ID at 11. Although the appellant may have performed in his position for many years without any accidents, the agency's concerns remained legitimate. *See Miller*, 121 M.S.P.R. 189, ¶ 11. The deciding official testified that the appellant's inability to distinguish colors posed a risk that he might connect electrical wires incorrectly, which could result in fatal injuries. HCD. The agency was unable to determine that the appellant could continue performing his duties safely and he refused to cooperate with the agency's inquiries as to the same.

*The administrative judge failed to address the appellant's affirmative defense of reprisal for engaging in protected union activity.*

¶11    When an appellant raises an affirmative defense in an appeal either by checking the appropriate box in an appeal form, identifying an affirmative defense by name, such as "race discrimination," "harmful procedural error," etc., or by alleging facts that reasonably raise such an affirmative defense, the administrative judge must address the affirmative defense(s) in any close of record order or prehearing conference summary and order. *Gath v. U.S. Postal Service*, 118 M.S.P.R. 124, ¶ 11 (2012). If an appellant expresses the intention to withdraw such an affirmative defense, the administrative judge must, at a minimum, in the close of record order or prehearing conference summary and

order, identify the affirmative defense, explain that the Board will no longer consider it when deciding the appeal, and give the appellant an opportunity to object to the withdrawal of the affirmative defense. *Id.*

¶12 Here, the appellant presented arguments concerning, inter alia, his acting as a union steward, representing fellow agency employees. *E.g.*, IAF, Tab 8 at 16 of 103, Tab 23 at 4-5, 18; PFR File, Tab 1 at 16-18. We find that these submissions, when interpreted liberally, constitute an allegation that the appellant's enforced leave was reprisal for his engaging in protected union activity. *See Melnick*, 42 M.S.P.R. at 97. Further, we found nothing in the record indicating that the appellant intended to withdraw that affirmative defense.

¶13 In notifying the appellant of his burden of proof, the administrative judge included a section titled "Retaliation for Engaging in EEO and other Protected Activity." IAF, Tab 38 at 9. However, the corresponding explanation exclusively referred to EEO activity. *Id.* at 9-11. The initial decision similarly includes a section that refers to the appellant's "prior EEO or other protected activity." ID at 13. But again, the corresponding analysis addresses EEO activity, without mention of union activity. ID at 13-16.

¶14 Because the administrative judge failed to explicitly address the appellant's allegation of reprisal for engaging in protected union activity as a distinct affirmative defense, we must remand for further adjudication. *See Gath*, 118 M.S.P.R. 124, ¶ 12 (finding that retaliation for EEO activity and union activity are separate affirmative defenses, and the failure to address one requires remand). To prove his affirmative defense of retaliation for engaging in union activity, on remand, the appellant must show that: (1) he engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action). *See*

*Warren v. Department of the Army*, <u>804 F.2d 654</u>, 656-58 (Fed. Cir. 1986)[3]; *Campo v. U.S. Postal Service*, <u>96 M.S.P.R. 418</u>, ¶ 12 (2004).

> *The administrative judge should reconsider the appellant's affirmative defense of EEO reprisal.*

¶15    After the administrative judge issued the initial decision in this appeal, we issued a decision in *Savage*, <u>122 M.S.P.R. 612</u>, clarifying the proper standard for allegations of retaliation for engaging in protected EEO activity. An appellant may establish this retaliation claim using direct evidence or any of three types of circumstantial evidence: a convincing mosaic of evidence from which a discriminatory intent may be inferred; evidence of disparate treatment of similarly situated comparators; or evidence that the agency's stated reason is not worthy of credence but rather a pretext for discrimination. *Id.*, ¶¶ 42-43. A convincing mosaic can be inferred from evidence of suspicious timing, ambiguous statements, behavior towards and comments directed at other protected employees, and other relevant "bits and pieces" of evidence. *Id.* ¶ 42 (quoting *Troupe v. May Department Stores Company*, <u>20 F.3d 734</u>, 736-37 (7th Cir. 1994)). If an appellant shows by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action, violating <u>42 U.S.C. § 2000e</u>-16, the Board will inquire whether the agency has

---

[3] We recently issued a decision discussing the standards for adjudicating an affirmative defense of retaliation for engaging in union activity. *See Alarid v. Department of the Army*, <u>122 M.S.P.R. 600</u> (2015). In doing so, we noted that the statutory changes of the Whistleblower Protection Enhancement Act of 2012 significantly narrowed the scope of cases to which the *Warren* standard applies. *Id*., ¶ 15 & n.7 (referencing *Warren*, 804 F.2d at 656-58). Because the appellant's employer is the U.S. Postal Service, the *Warren* standard still applies in this case, for purposes of the appellant's allegation of retaliation for engaging in union activity. *See Mack v. U.S. Postal Service*, <u>48 M.S.P.R. 617</u>, 621-22 (1991) (finding that U.S. Postal Service employees are subject to the *Warren* standard for retaliation affirmative defenses, rather than the contributing factor standard, because the U.S. Postal Service is not an "agency" as defined under <u>5 U.S.C. § 2302</u>(a)(2)(C) and its employees may not bring an individual right of action under <u>5 U.S.C. § 1221</u>); *Savage*, <u>122 M.S.P.R. 612</u>, ¶¶ 42-43, 49-51 (effectively limiting the scope of *Warren* and *Mack* by establishing a distinct standard for an affirmative defense of retaliation for engaging in EEO activity).

shown by preponderant evidence that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. *Id*., ¶¶ 49-51. If the agency meets that burden, its violation will not require reversal of the action. *Id*., ¶ 51.

¶16     The administrative judge found that management was aware of the appellant's protected activity, which took place in 2012 and 2013. ID at 15; *see, e.g.*, IAF, Tab 26 at 40. However, he failed to consider whether this timing was part of a convincing mosaic of discriminatory intent. *See* ID at 15. Further, because *Savage* was issued after the initial decision in this case, the administrative judge's instructions to the appellant regarding proof of his affirmative defense of EEO reprisal did not provide the appellant with notice of the correct standards. IAF, Tab 38 at 9-11; *see Milner v. Department of Justice*, 77 M.S.P.R. 37, 46 (1997) (finding that an appellant did not receive a fair and just adjudication of an affirmative defense where there was no indication the administrative judge apprised him of the applicable burdens of proof or of the types of evidence required to meet his burden). For example, the administrative judge advised the appellant that his proof could consist of elements of his prima facie case of reprisal under the burden-shifting framework applicable to motions for summary judgment; however, the prima facie case has no application to the Board's adjudication of EEO reprisal claims. *See* IAF, Tab 38 at 10; *see Savage*, 122 M.S.P.R. 612, ¶ 46 (reflecting that the summary judgment standards for Title VII cases do not apply to Board appeals).

¶17     On remand, the administrative judge should instruct the parties of the standards of proof applicable to a claim of EEO reprisal pursuant to *Savage*, and provide them with an opportunity to further develop the evidence. The administrative judge's new decision should incorporate the *Savage* standard for analyzing the appellant's allegation of reprisal for EEO activity.

*The appellant failed to prove any other affirmative defense.*

¶18        Concerning his other affirmative defenses, the appellant's petition presents varying allegations of agency impropriety, PFR File, Tab 1 at 8-22, 27-29, but none provide a basis for reversing his enforced leave.  For example, the appellant alleges that the agency violated the Family and Medical Leave Act of 1993 (FMLA), Americans with Disabilities Act (ADA), and Privacy Act by requesting and discussing documentation concerning his medical condition.  *Id*. at 12-14.  In addition, he argues that he was not responsible for responding to the agency's offers regarding reasonable accommodation.  *Id*. at 15-16.  According to the appellant, he had a constitutional right to remain silent regarding his vision issues and the proposed enforced leave, and the agency's concerns about his condition amounted to harassment.  *Id*. at 19-21.

¶19        We agree with the administrative judge's finding that the agency requested medical documentation only after the appellant reported difficulties distinguishing colors, which raised safety concerns and questions about his ability to perform job duties.  ID at 16-18; *see, e.g*., IAF, Tab 21 at 14.  The appellant has failed to show how those inquiries and discussions exceeded that which is permissible.  *See* 5 U.S.C. § 552a(b)(1) (containing an exception to the general prohibition on disclosure under the Privacy Act for disclosures to agency employees who require the records at issue to perform their duties); *see also* 42 U.S.C. § 12112(d)(4)(A) (a disability-related inquiry is permissible under the ADA if "job-related and consistent with business necessity"); *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶¶ 29-30 (2014) (holding that generally, a disability-related inquiry or medical examination may be job-related and consistent with business necessity if an employer has a reasonable belief, based on objective evidence, that:  (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a significant risk of substantial harm to self or others that cannot be

eliminated by reasonable accommodation); 29 C.F.R. §§ 825.500(g)(1)[4] (permitting an agency to provide medical restrictions to supervisors and managers without violating the FMLA), 1630.14(c)(1)(i) (permitting an employer to provide medical restriction to supervisors and managers without violating the ADA).

¶20     We also agree with the administrative judge's finding that the appellant's request that the agency cease its use of a newly implemented color coding system due to his colorblindness was a request for accommodation, despite the appellant's assertion on review that he did not request or want accommodation. ID at 17; HCD (testimony of the deciding official); *see Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 17 (2006) (finding that an employee need only let his employer know in general terms that he needs accommodation for a medical condition). Accordingly, while the appellant generally contends that he had a right to be left alone, he actually was obligated to cooperate in the interactive process for reasonable accommodation. *See Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶¶ 18-19 (2015); *Brown*, 121 M.S.P.R. 205, ¶ 22; *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 16 (2010). Finally, we agree with the administrative judge's finding that the appellant failed to prove retaliation for whistleblowing activity. ID at 19-21. The administrative judge found that, even if his disclosures were protected and management knew of them, the appellant failed to present any connection between his protected activity and his placement on enforced leave. ID at 20-21; *see Mack*, 48 M.S.P.R. at 621-22 (holding that U.S. Postal Service employees are subject to a higher standard of proof for whistleblower reprisal affirmative defenses, requiring that they show, inter alia, that there was a genuine nexus between the alleged retaliation and the adverse action). The appellant has presented nothing on review warranting a contrary conclusion.

---

[4] As a U.S. Postal Service employee, the appellant is entitled to FMLA leave under the provisions of 29 U.S.C. § 2601 and 29 C.F.R. part 825. *Young v. U.S. Postal Service*, 79 M.S.P.R. 25, 35 n.4 (1998).

The administrative judge exercised proper discretion in excluding evidence and witnesses.

¶21    The appellant asserts that the administrative judge affected his fundamental rights and curtailed his ability to present his case by excluding some of his evidence and witnesses.  PFR File, Tab 1 at 4.  He also asserts that the administrative judge erred by allowing the agency to submit some of the same evidence that he submitted.  *Id*. at 4-5; *compare, e.g*., IAF, Tab 21 at 10-14, *with* IAF, Tab 2 at 14 of 253, Tab 31 at 14-15.  We find no merit in either assertion.

¶22    An administrative judge has broad discretion to regulate the course of the hearing and to exclude evidence and witnesses that have not been shown to be relevant, material, and nonrepetitious.  *Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 4 (2011); *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985); 5 C.F.R. § 1201.41(b)(8), (10).  To obtain reversal of an initial decision on these grounds, the petitioning party must show that a relevant witness or evidence, which could have affected the outcome, was disallowed.  *See Thomas*, 116 M.S.P.R. 453, ¶ 4; *Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981) (stating that an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights).

¶23    The administrative judge did exclude a number of documents the appellant filed below as evidence, concluding that they were irrelevant to his appeal.  IAF, Tab 38 at 11-12 (referencing the appellant's exhibits 15, 39-49, 56, 61, 66-70, 72-76, 78, 90); *see* IAF, Tab 2 at 90-91, 202-53 of 253, Tab 8 at 64-71, 87-88, 119-70, 172-89, 193-203, Tab 13 at 27-28.  She also excluded transcripts from conversations the appellant recorded because he admitted lacking permission to record the conversations in potential violation of state law, and because she deemed the transcripts untrustworthy since they were created by the appellant rather than a third party.  IAF, Tab 38 at 12 (referencing the appellant's exhibits 101-02); *see* IAF, Tab 26 at 100-14; Wash. Rev. Code § 9.73.030(1)(b).  Finally,

the administrative judge denied the appellant's request to call two of his proposed witnesses because she found no relevance to their proffered testimony. IAF, Tab 38 at 11; *see* IAF, Tab 23 at 4.

¶24 Although the appellant summarily claims that the aforementioned evidence and witnesses were excluded improperly and that they "would have changed the results of the hearing," he failed to present any substantive argument in support of that assertion. PFR File, Tab 1 at 4; *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). Without any explanation to the contrary, much of the excluded evidence appears unrelated to the appellant. *See, e.g.*, IAF, Tab 2 at 90-91, 210-13 of 253, Tab 8 at 64-71. Other evidence is more clearly related to the appellant, but nevertheless appears unrelated to the instant appeal. *See, e.g.*, IAF, Tab 2 at 202-09, Tab 8 at 119-30. Similarly, the relevance of the two excluded witnesses to the appellant's appeal is not apparent. IAF, Tab 23 at 4.

¶25 In the absence of any explanation why the excluded evidence and witnesses are relevant and how their exclusion affected the outcome of his appeal, we are unable to find any merit to the appellant's claim. We also find unpersuasive his assertion that the administrative judge erred by allowing the agency to submit evidence that was similar or duplicative of his own. The appellant has not shown any resulting harm.

The administrative judge properly denied the appellant's request to consolidate his Board appeal with his EEO complaints.

¶26 In his petition, the appellant seems to argue that the administrative judge erred by not consolidating his Board appeal with his EEO complaints. PFR File, Tab 1 at 5-6; *see* IAF, Tab 12 at 4-5. We disagree.

¶27 Under 5 U.S.C. § 7702(a)(1), in the case of any employee who has been affected by an action that he may appeal to the Board, and who alleges that "a basis for the [appealable] action" was prohibited discrimination, the Board shall

decide "both the issue of discrimination and the appealable action." Under 5 C.F.R. § 1201.36, an administrative judge may consolidate or join two or more appeals under certain circumstances.

¶28    The appellant appears to confuse the aforementioned legal concepts, which are distinct and unrelated. The administrative judge acknowledged the Board's responsibilities under 5 U.S.C. § 7702(a)(1) and adjudicated the appellant's allegations accordingly, ID at 13-21, but the appellant argues that the administrative judge should have adjudicated his pending EEO complaints at the same time. Citing the Board's regulation for consolidation and joinder, 5 C.F.R. § 1201.36, the appellant requested that the administrative judge consolidate his Board appeal and EEO complaints. IAF, Tab 20; *see* IAF, Tab 12 at 4-5. According to the appellant, the claims were "inextricably intertwined." PFR File, Tab 1 at 5. However, nothing in 5 C.F.R. § 1201.36 provides for the consolidation or joinder of a Board appeal with an appeal from another tribunal. *See generally Lethridge v. U.S. Postal Service*, 99 M.S.P.R. 675, ¶ 9 (2005) (finding that nothing in the plain language of sections 7512, 7513(d), and 7702(a)(1) of title 5 suggests that the Board has jurisdiction over otherwise nonappealable actions when those actions are allegedly "inextricably intertwined" with otherwise appealable actions). Therefore, we discern no error in the administrative judge's conclusion that she could not consolidate the appellant's EEO complaints with his Board appeal.

The administrative judge properly denied the appellant's request to disqualify the agency's representative.

¶29    The appellant argues that the administrative judge erred in failing to grant his request to disqualify the agency's attorney. PFR File, Tab 1 at 6-7; *see* IAF, Tab 12 at 3-4, Tab 38 at 14. We disagree.

¶30    The Board's regulations allow parties wide discretion in choosing their representatives, subject only to disqualification for conflict of interest or position. *Walton v. Tennessee Valley Authority*, 48 M.S.P.R. 462, 469 (1991); 5 C.F.R.

§ 1201.31(a)-(c).  Apart from these bases for disqualification, a party's choice of representative is personal to him and, similarly, an agency may choose to be represented by an attorney or a nonattorney, at its discretion.  *Walton*, 48 M.S.P.R. at 469.

¶31    The appellant seems to suggest that disqualification was required because the agency's attorney filed evidence relating to the appellant's military record and Board jurisdiction that the appellant was able to rebut with evidence of his own. PFR File, Tab 1 at 6-7.  He also seems to suggest that disqualification was required because the agency was obligated to use a nonattorney representative for his Board appeal.  *Id.* at 6-7.  However, the appellant has not shown or even alleged that the agency's representative had a conflict of interest or position.  Nor has he shown that the agency's representative engaged in contumacious conduct warranting his exclusion from the proceedings.  *See* 5 C.F.R. §§ 1201.31(d), .43(d) (permitting the exclusion of a party's representative for contumacious conduct or conduct prejudicial to the administration of justice); Black's Law Dictionary 337 (9th ed. 2009) (defining "contumacious conduct" as "willful disobedience of a court order").  Therefore, his arguments that the agency's representative should have been disqualified fail.

The appellant's remaining arguments on review also fail.

¶32    The appellant seems to allege that the agency acted improperly when he requested a return to work following a medical certification that he was fit for duty.  PFR File, Tab 1 at 22-26.  However, the propriety of placement on enforced leave and the continuation of enforced leave are distinct matters.  *See Rhodes v. Merit Systems Protection Board*, 487 F.3d 1377, 1380 (Fed. Cir. 2007). For instance, if an employee on enforced leave comes forward with evidence that he has become fit for duty, that employee should be immediately returned to duty; but such evidence does not require reversal of the enforced leave in its entirety when it was initiated properly based on the information available to the agency at the time it made that decision.  *See Norrington v. Department of the*

*Air Force*, [83 M.S.P.R. 23](#), ¶¶ 8-9 (1999).  In addition, the certification at issue is signed by a physician's assistant at a family medical practice.  IAF, Tab 10 at 38-41, Tab 51 at 2-3.  It provides that the appellant has medical conditions, including colorblindness, but he has no medical restrictions.  IAF, Tab 10 at 39.  However, that same certification alludes to an inability to work on colored wiring.  *Id.* Therefore, as the administrative judge properly found, the appellant has identified no basis by which this certification could be used to compel the agency to return him to duty without addressing the underlying concern that remains, the impact of his colorblindness on his ability to perform the essential functions of his position in a safe and compliant manner.  ID at 12-13.

¶33   Although we have considered the appellant's remaining arguments, such as his allegation that the agency has no official policy concerning enforced leave and his request for nominal, compensatory, and punitive damages, *e.g.*, PFR File, Tab 1 at 26-27, we are not persuaded.

**ORDER**

¶34   For the reasons discussed above, we vacate the initial decision and remand this case to the regional office for further adjudication in accordance with this Remand Order.  On remand, the administrative judge should apprise the appellant of the different burdens of proof he must meet to prove his affirmative defenses of retaliation for protected union activity and retaliation for protected EEO activity; afford the appellant an opportunity for discovery on these issues; and hold a supplemental hearing to address these two affirmative defenses, if requested.  *See Savage*, [122 M.S.P.R. 612](#), ¶ 46 (observing that the Board has no authority to grant summary judgment in light of an appellant's right to a hearing); *Alarid*, [122 M.S.P.R. 600](#), ¶ 18 (2015) (advising an administrative judge to hold a supplemental hearing on union reprisal and other affirmative defenses if requested); *Gath*, [118 M.S.P.R. 124](#), ¶ 13 (holding the same with regard to a union reprisal affirmative defense).  The administrative judge must issue a new

initial decision that addresses those two affirmative defenses and their effect on the outcome of the appeal, if any, giving appropriate consideration to any additional relevant evidence developed on remand.[5]  *See Alarid*, 122 M.S.P.R. 600, ¶ 18; *Gath*, 118 M.S.P.R. 124, ¶ 13.  If the appellant does not prevail on either of those two affirmative defenses on remand, the administrative judge may adopt her prior findings concerning the agency's charge, nexus, and the reasonableness of the penalty, and the appellant's remaining affirmative defenses, in her remand initial decision.  *See Alarid*, 122 M.S.P.R. 600, ¶ 18; *Gath*, 118 M.S.P.R. 124, ¶ 13.


FOR THE BOARD:                             _____
                                          William D. Spencer
                                          Clerk of the Board

Washington, D.C.

---

[5] The administrative judge should reconsider the previously excluded evidence, to the extent that it may pertain to the affirmative defenses requiring further adjudication. IAF, Tab 2 at 214-52 of 253, Tab 38 at 11-12.