# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

GARY R. AGNEW,
                    Appellant,

            v.

UNITED STATES POSTAL SERVICE,
                    Agency.

DOCKET NUMBERS
NY-0353-14-0337-I-1
PH-0752-04-0423-I-9
PH-0752-04-0598-I-8
PH-0752-04-0425-I-8

DATE: December 22, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

George Goshdigian, Hebron, Connecticut, for the appellant.

Michael R. Salvon, Esquire, Windsor, Connecticut, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his restoration claim for lack of jurisdiction, dismissed for lack of jurisdiction in part and reversed in part his constructive suspension, reversed his indefinite suspension, and sustained his removal.  Generally, we grant petitions

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to incorporate the standards set out in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), for the appellant's affirmative defenses of race discrimination and equal employment opportunity (EEO) reprisal, we AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The appellant filed a number of timely appeals concerning a series of events that occurred between 2001 and 2004. The first was a restoration appeal. *Agnew v. U.S. Postal Service*, MSPB Docket No. PH-0353-04-0289-I-1, Initial Appeal File (0289 IAF), Tab 1. The second was a constructive suspension appeal. *Agnew v. U.S. Postal Service*, MSPB Docket No. PH-0752-04-0423-I-1, Initial Appeal File (0423 IAF), Tab 1. The third was an indefinite suspension appeal. *Agnew v. U.S. Postal Service*, MSPB Docket No. PH-0752-04-0425-I-1, Initial Appeal File (0425 IAF), Tab 1. And the fourth was a removal appeal. *Agnew v. U.S. Postal Service*, MSPB Docket No. PH-0752-04-0598-I-1, Initial Appeal File (0598 IAF).

¶3 In 2013, during one of several lengthy dismissals without prejudice to accommodate his imprisonment and medical limitations, the appellant filed a

pleading that was docketed as a petition for review. *E.g.*, *Agnew v. U.S. Postal Service*, MSPB Docket No. PH-0353-04-0289-I-8, Petition for Review (0289 PFR) File, Tab 1. The Board dismissed the petition as untimely, but forwarded the matters to the regional office, finding that the submission should be construed as a timely motion to refile his previously dismissed appeals. *Agnew v. U.S. Postal Service*, MSPB Docket Nos. PH-0353-04-0289-I-8, PH-0752-04-0423-I-7, Final Order at 1-3 (Aug. 23, 2013); *see Agnew v. U.S. Postal Service*, MSPB Docket No. NY-0353-14-0337-I-1, Initial Appeal File (0337 IAF), Tab 1.[2] Thereafter, the administrative judge held a single hearing and adjudicated the appellant's four claims together. *See, e.g.*, 0337 IAF, Tab 20, Initial Decision (0337 ID).[3]

¶4        Pertinent undisputed facts underlying the appeals include the following: the appellant is a preference-eligible veteran who suffered an on-the-job injury requiring a total knee replacement in February 2001, after which he began collecting Office of Workers' Compensation Programs (OWCP) benefits and never returned to work. 0337 IAF, Tab 6 at 1-2. In December 2001, the Postal Inspection Service (PIS) opened an undercover investigation into the appellant's condition and his ability to work. *Id*. at 2. Eventually, the PIS forwarded its findings to the U.S. Attorney's Office, and, in August 2003, the appellant was indicted on 15 felony counts of mail fraud along with 1 felony count of Federal compensation fraud, all stemming from his collecting OWCP benefits. *Id*. Soon after, in September 2003, the appellant's physician sent a report to the agency,

---

[2] In a July 29, 2014 prehearing conference summary, the administrative judge noted that, when MSPB Docket No. PH-0353-04-0289-I-9 was refiled in the New York Field Office, it was assigned a new docket number, MSPB Docket No. NY-0353-14-0337-I-1, "to meet internal administrative requirements." 0337 IAF, Tab 6 at 1 n.1.

[3] In the 0337 ID, the administrative judge adjudicated the following matters: MSPB Docket No. NY-0353-14-0337-I-1; MSPB Docket No. PH-0752-04-0423-I-9; MSPB Docket No. PH-0752-04-0598-I-8; and MSPB Docket No. PH-0752-04-0452-I-8.

describing his medical condition and limitations. *Id*. at 2-3. Later, in March 2004, a jury found the appellant guilty on all counts of the criminal indictment. *Id*. at 2. Beginning in April 2004, the appellant requested a return to duty, but the agency did not respond to the request. *E.g*., 0289 IAF, Tab 8, Subtab 4b. The agency proposed and imposed an indefinite suspension, effective June 18, 2004. 0337 IAF, Tab 6 at 3. The agency then proposed and imposed the appellant's removal, effective August 27, 2004. *Id*. at 3-4.

¶5 After holding the requested hearing, the administrative judge found that the appellant was, in part, improperly subjected to a constructive suspension. 0337 ID at 31-37. He also reversed the agency's indefinite suspension. *Id*. at 23-30. However, he dismissed the restoration claim for lack of jurisdiction, *id*. at 16-22, and affirmed the appellant's removal, *id*. at 10-15, 37-50.

¶6 The appellant has filed a petition for review. *Agnew v. U.S. Postal Service*, MSPB Docket No. NY-0353-14-0337-I-1, Petition for Review (0337 PFR) File, Tab 4. The agency has filed a response, to which the appellant has replied. 0337 PFR File, Tabs 8-9.

Restoration Appeal, MSPB Docket No. NY-0353-14-0337-I-1[4]

¶7 In his first appeal, the appellant alleged that he was improperly denied restoration as a partially recovered employee, beginning on September 4, 2003, the date his physician submitted a letter to the agency discussing his functional capacity. 0289 IAF, Tab 1. The administrative judge dismissed the claim for lack of jurisdiction. 0337 ID at 16-22.

¶8 The administrative judge found, and the parties do not dispute, that the appellant was physically disqualified from his former position or an equivalent one. 0337 ID at 17-18. As a physically disqualified employee who requested

---

[4] As noted supra ¶ 3 n.2, MSPB Docket No. PH-0353-04-0289-I-9 was reassigned docket no. NY-0353-14-0337-I-1 upon refiling by the New York Field Office on July 23, 2014.

restoration more than 1 year after compensation began, the appellant had the rights of a partially recovered employee. *Boutin v. U.S. Postal Service*, 115 M.S.P.R. 241, ¶ 10 (2010). To establish jurisdiction over a restoration appeal as a partially recovered individual, an appellant must prove by preponderant evidence that: (1) he was absent from his position due to a compensable injury; (2) he recovered sufficiently to return to duty on a part-time basis or to return to work in a position with less demanding physical requirements than those previously required of him; (3) the agency denied his request for restoration; and (4) the denial was arbitrary and capricious. *Bledsoe v. Merit Systems Protection Board*, 659 F.3d 1097, 1104 (Fed. Cir. 2011); *Latham v. U.S. Postal Service*, 117 M.S.P.R. 400, ¶ 10 (2012).[5] The administrative judge found that, inter alia, the appellant failed to meet his burden concerning the first jurisdictional element due to the intervening actions between his initial absence and his eventual request to return to duty. 0337 ID at 20-21. In effect, he found that the appellant was not absent from his position due to a compensable injury; he was absent because he was committing OWCP fraud. *Id.* Alternatively, the administrative judge found that the appellant was not entitled to reinstatement due to his misconduct. *Id.* at 20-22; *see generally* 5 C.F.R. § 353.108 (providing that "if during the period of injury . . . the employee's conduct is such that it would disqualify him or her from employment under [Office of Personnel Management (OPM)] or agency regulations, restoration rights may be denied").

¶9     On review, the appellant reasserts his restoration claim, generally. 0337 PFR File, Tab 4 at 34-35. He argues that the agency failed to search the local commuting area after receiving the September 4, 2003 letter from his

---

[5] *Bledsoe* and *Latham* both apply the "preponderant evidence" standard rather than the new "nonfrivolous allegation" standard. The new standard applies only in cases filed on or after March 30, 2015, Practices and Procedures, 80 Fed. Reg. 4,489, 4,496 (Jan. 28, 2015) (codified in pertinent part at 5 C.F.R. § 1201.57), and is therefore inapplicable to this appeal.

physician and failed to restore him after a deposition that occurred sometime in 2004, when he reportedly indicated that he was ready to work. *Id.* However, these assertions do not substantively address his failure to prove jurisdiction over the restoration claim. Therefore, we find that they provide no basis for disturbing the initial decision.

Constructive Suspension Appeal, MSPB Docket No. PH-0752-04-0423-I-9

¶10    In his next appeal, the appellant alleged that the agency imposed a constructive suspension beginning on either March 31, 2004, the date his OWCP benefits ceased, or September 4, 2003, the date of the aforementioned letter from his physician.[6] *E.g.*, 0423 IAF, Tab 1.

¶11    The Board lacks jurisdiction over appeals of employees' voluntary actions. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 7 (2013). However, involuntary leaves of absence may be appealable under chapter 75 as constructive suspensions. *Id.*, ¶ 8. Assuming that the jurisdictional requirements of chapter 75 are otherwise met, an appellant must prove that (1) he lacked a meaningful choice in the matter, and (2) it was the agency's wrongful actions that deprived him of that choice. *Id.*

¶12    In this case, although the appellant's physician did submit a letter on September 4, 2003, it was directed to the agency's Injury Compensation Office, and it did not include a request to return to duty. 0589 IAF, Tab 7 at 35-36. Instead, the letter was, at best, ambiguous concerning the appellant's return. *Id.*

---

[6] In some contexts, wherein facts could give rise to both a constructive suspension claim and restoration claim, the Board has found that the constructive suspension claim should be subsumed in the restoration claim. *Kinglee v. U.S. Postal Service*, 114 M.S.P.R. 473, ¶¶ 19-22 (2010). However, the Board also has recognized that a constructive suspension claim may be appropriate if the Board is precluded from considering the full scope of an appellant's restoration claim. *Latham v. U.S. Postal Service*, 117 M.S.P.R. 400, ¶ 27 n.17 (2012). We find, in light of the Board's lack of jurisdiction over the appellant's restoration claim, that the administrative judge properly adjudicated his constructive suspension claim.

The letter provided, "the [appellant] reports that he is unable to work; however, I do feel he is capable of working in a sedentary capacity." *Id*. at 36. In the absence of evidence that the appellant affirmatively requested a return to duty prior to April 2, 2004, the administrative judge found that the appellant failed to establish jurisdiction over his constructive suspension claim for the period leading up to that date. 0337 ID at 31-33.

¶13 For the remaining period, from April 2 to June 17, 2004, the administrative judge ruled in the appellant's favor. *Id*. at 33-37. He found that the appellant did request a return to duty, beginning on April 2, 2004, and the agency imposed a constructive suspension by failing to respond. *Id*. (referencing 0289 IAF, Tab 8, Subtab 4b; 0337 IAF, Hearing Compact Disc (HCD) (testimony of the appellant)). Because the appellant did not receive due process for this constructive suspension, the administrative judge reversed the action. *Id*. at 50; *see Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 8 (2014) (recognizing that the jurisdictional issue is often dispositive in constructive adverse action appeals because the action was likely effected without notice, in violation of the employee's right to due process).

¶14 On review, the appellant has referred to his constructive suspension claim, generally. *E.g.*, 0337 PFR File, Tab 4 at 16. However, he has failed to present any argument that addresses the administrative judge's finding that the Board lacks jurisdiction over the constructive suspension claim for the period prior to April 2, 2004. *See* 0337 ID at 31-33. He has not identified any evidence that could be construed as a request to return to duty for that period.

¶15 Accordingly, we agree with the administrative judge that the appellant was constructively suspended from April 2 to June 17, 2004, but that he failed to establish that he was constructively suspended for any period prior to April 2, 2004.

Indefinite Suspension Appeal, MSPB Docket No. PH-0752-04-0425-I-8

¶16    The appellant's next appeal challenged the agency's indefinite suspension, effective June 18, 2004, through his August 27, 2004 removal.  *E.g.*, 0425 IAF, Tab 1.  The administrative judge found that the agency improperly imposed the indefinite suspension because, inter alia, the agency failed to identify a condition subsequent that would end the suspension.  0337 ID at 23-30; *see Sanchez v. Department of Energy*, 117 M.S.P.R. 155, ¶ 9 (2011) (recognizing that an agency must show, inter alia, that an indefinite suspension has an ascertainable end, i.e., a determinable condition subsequent that will bring the suspension to a conclusion).  Accordingly, the administrative judge ordered the agency to cancel the indefinite suspension.  0337 ID at 50.

¶17    On review, the appellant also appears to reassert that the agency erred in imposing the indefinite suspension.  0337 PFR File, Tab 4 at 19, 23, 30, 33.  However, we need not address the claim further because the administrative judge ordered the agency to cancel the indefinite suspension, and the agency has not challenged the matter on review.  0337 ID at 23-30, 50; 0337 PFR File, Tab 8 at 6.  In light of our finding, discussed below, that the administrative judge properly denied the appellant's affirmative defenses, there is no additional relief that the Board can award.

Removal Appeal, MSPB Docket No. PH-0752-04-0598-I-8

¶18    In his final appeal, the appellant challenged his removal from service.  0598 IAF, Tab 1.  The action was based upon two charges, "Conviction of Sixteen (16) Felony Counts" and "Falsification of Form CA-1032."  *Agnew v. U.S. Postal Service*, MSPB Docket No. PH-0752-04-0598-I-8, Refiled Appeal File (0598 RAF-8), Tab 6 at 14-17, 20-23.  The administrative judge found that the doctrine of collateral estoppel precludes the appellant from relitigating or denying the charges.  0337 ID at 10-15.  He also denied the appellant's affirmative defenses and found that the agency met its burden of proof concerning nexus and the reasonableness of its penalty.  *Id.* at 37-50.  On review, the

appellant has presented numerous arguments that appear to implicate the charges and his affirmative defenses, but we find no merit to any of them.

*Charges*

¶19      Collateral estoppel, or issue preclusion, bars a party from relitigating an issue that was previously litigated and is applicable if: (1) the issue is identical to that involved in the prior action; (2) the issue was actually litigated in the prior action; (3) the determination on the issue in the prior action was necessary to the resulting judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action, either as a party to the earlier action or one whose interests were otherwise fully represented in that action. *McNeil v. Department of Defense*, 100 M.S.P.R. 146, ¶ 15 (2005). The administrative judge found each of these elements satisfied, based upon the appellant's criminal charges and conviction, precluding him from relitigating the same issue in the context of the agency's charges. 0337 ID at 10-15. *Compare* 0598 RAF-8, Tab 6 at 20-23 (agency's charges), *with* 0598 RAF-8, Tab 7 at 39-41, 44-49 (criminal charges and conviction).

¶20      On review, the appellant attempts to relitigate his criminal conviction. For example, he alleges that PIS officials lied or improperly provided personal opinions to the grand jury. 0337 PFR File, Tab 4 at 9. He also argues that the PIS improperly listened in on his phone conversations during its investigation, without a proper warrant. *Id*. at 20-21. He further claims that the jury was not provided all material evidence, and he never intended to commit any wrongdoing. *Id*. at 9, 11. However, he has not presented any basis for disturbing the administrative judge's application of collateral estoppel, and we are aware of none. *See Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 10 (2006) (recognizing that collateral estoppel is properly applied to preclude an appellant who has been convicted of a criminal offense from relitigating whether he committed the charged conduct in an adverse action appeal when the alleged misconduct is identical to that in the criminal proceedings). We agree with the

administrative judge; the appellant is precluded from relitigating the charges underlying his removal.

¶21    The appellant next asserts that the agency's removal action was improper because he already had served an indefinite suspension for the same misconduct. 0337 PFR File, Tab 4 at 8, 16, 20, 22-23. We disagree. It is well established that an agency may indefinitely suspend an employee based upon reasonable cause to believe he has committed a crime for which a sentence of imprisonment could be imposed and thereafter remove him based upon either his subsequent criminal conviction or his underlying misconduct. *Frederick v. Department of Homeland Security*, 122 M.S.P.R. 401, ¶ 14 (2015). Accordingly, the agency's (now canceled) indefinite suspension did not preclude the subsequent removal action. *See id.*; 0589 RAF-8, Tab 6 at 20-21, 39.

¶22    Concerning the charges, the appellant lastly argues that he was not provided the requisite notice period or otherwise lacked the opportunity to fully respond to the removal action. 0337 PFR File, Tab 4 at 19-20. We disagree. The agency proposed his removal on June 30, 2004, accepted both a verbal and written response, and then issued its decision on August 23, 2004. 0589 RAF-8, Tab 6 at 14, 20. Therefore, the appellant received the 30-days' advanced written notice to which he was entitled, along with an opportunity to respond. *See* 5 U.S.C. § 7513(b)(1)-(2).

*Affirmative Defenses*

¶23    Below, the appellant asserted affirmative defenses of disability discrimination, race discrimination, reprisal for engaging in protected activity, and harmful error. 0337 IAF, Tab 6 at 12-16. The administrative judge found that each failed. 0337 ID at 37-45.

¶24    On review, the appellant appears to reassert his disability discrimination claim. *E.g.*, 0337 PFR File, Tab 4 at 18. The administrative judge addressed the claim in terms of the appellant's prior leg injury, finding that although he did have a disability, he failed to prove his claim because he did not articulate a

reasonable accommodation that would allow him to perform his Mail Handler position. 0337 ID at 37-41. On review, the appellant suggests that the administrative judge failed to consider a separate matter. 0337 PFR File, Tab 4 at 18. According to the appellant, he sought treatment for a prescription drug problem after responding to the proposed removal and the agency was, therefore, required to accommodate that illness before taking an adverse action. *Id*. We disagree. Even if the appellant were able to prove that he was disabled because of a drug problem, the disability would not have precluded the agency from removing him based upon his misconduct. *See, e.g.*, *Burton v. U.S. Postal Service*, 112 M.S.P.R. 115, ¶ 16 (2009) (explaining that the Americans with Disabilities Act does not immunize disabled employees from discipline for misconduct, provided the agency would impose the same discipline on an employee without a disability); *Fitzgerald v. Department of Defense*, 85 M.S.P.R. 463, ¶ 4 (2000) (recognizing that an agency is never required to excuse a disabled employee's violation of a uniformly-applied, job-related rule of conduct, even if the employee's disability caused the misconduct).

¶25    In addition, the appellant presents a number of arguments concerning a harmful error affirmative defense. *E.g*., 0337 PFR File, Tab 4 at 10, 13-14, 20-21. The Board will reverse a removal action if an appellant shows that the agency committed a harmful procedural error. 5 U.S.C. § 7701(c)(2)(A); 5 C.F.R. § 1201.56(c)(1). A harmful error is one that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. 5 C.F.R. § 1201.4(r). The administrative judge found that the appellant failed to meet his burden of proving any such error, and we agree. 0337 ID at 41-42.

¶26    Under OPM regulations, an agency is required to provide an employee the opportunity to review any materials on which it relied in support of the charges. 5 C.F.R. § 752.404(b)(1). The appellant alleges that the agency failed to comply with this requirement because it withheld items such as transcripts from recorded

telephone conversations and a February 13, 2003 letter the PIS provided the U.S. Attorney in support of his criminal prosecution. 0337 PFR File, Tab 4 at 20-21. However, the agency's proposal to remove the appellant specified that he or his representative could review all supportive materials, 0589 RAF-8, Tab 6 at 22, and the appellant has not shown that the proposing or deciding official relied upon any evidence not made available to the appellant, such as the aforementioned transcripts and letter provided to the U.S. Attorney. Therefore, we find that the claim fails.

¶27 The appellant's other harmful error claims are similarly unavailing. For example, he alleges that the agency violated his privacy by obtaining medical records. 0337 PFR File, Tab 4 at 14. He also claims that, after he responded to the proposed removal, the agency should have informed him which, if any, of the defenses he presented were sustained. *Id*. at 13. Even if he had shown that these actions were improper, we agree with the administrative judge's conclusion that the appellant failed to prove that they were harmful. 0337 ID at 42.

¶28 Concerning his affirmative defenses, the appellant also reasserts his claim of retaliation for engaging in union activity.[7] 0337 PFR File, Tab 4 at 27, 34-35. He claims that another employee had a similar knee injury and also worked while collecting OWCP benefits, but the agency accommodated that individual and never bothered investigating his having collected benefits. *Id*. According to the

---

[7] The appellant does not appear to reassert his prior allegations of race discrimination or reprisal for engaging in protected EEO activity. However, just before the administrative judge issued his decision, the Board clarified the evidentiary standards and burdens of proof under which the Board analyzes these affirmative defenses. *See Savage*, 122 M.S.P.R. 612, ¶¶ 42-43, 51. We find that applying the analytical framework in *Savage* would not change the result in this case. Thus, based on the existing record, and for the reasons contained in the initial decision, we affirm the administrative judge's finding that the appellant did not meet his burden of proving these claims. 0337 ID at 43-45.

appellant, the only distinguishing factor between them is that the appellant was a former union official. *Id*.

¶29 To prove his affirmative defense of retaliation for engaging in union activity, the appellant was required to show that: (1) he engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action. *See Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986).[8] Although the appellant alleges that the agency treated another employee differently, generally, he has failed to present sufficient allegations or any evidence to support the claim. Accordingly, we discern no basis for disturbing the administrative judge's conclusion that, after weighing the gravity of his misconduct against the motive to retaliate, the appellant failed to prove the genuine nexus element. 0337 ID at 43-44; *see Warren*, 804 F.2d at 658 (noting that analysis of the genuine nexus element requires weighing the intensity of the motive to retaliate against the gravity of the misconduct charges).

The appellant's remaining arguments provide no basis for disturbing the initial decision.

¶30 The appellant has presented a number of additional arguments. However, as detailed below, we find that none provide any basis for disturbing the initial decision.

---

[8] The statutory changes of the Whistleblower Protection Enhancement Act of 2012 significantly narrowed the scope of cases to which the *Warren* standard applies. *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-15 & n.7 (2015). However, because the appellant's employer was the U.S. Postal Service, the *Warren* standard still applies in this case for purposes of the appellant's allegation of retaliation for engaging in union activity. *See Mack v. U.S. Postal Service*, 48 M.S.P.R. 617, 621-22 (1991) (finding that U.S. Postal Service employees are subject to the *Warren* standard for retaliation affirmative defenses, rather than the contributing factor standard, because the U.S. Postal Service is not an "agency" as defined under 5 U.S.C. § 2302(a)(2)(C), and its employees may not seek corrective action under 5 U.S.C. § 1221).

¶31    According to the appellant, the administrative judge improperly denied him the opportunity to obtain testimony from requested witnesses D.M., D.B., M.E., R.L., and J.H.  0337 PFR File, Tab 4 at 7, 11, 15, 35, 37.  D.M. was one of the PIS investigators, R.L. was a purported OWCP expert, and J.H. was the aforementioned employee who reportedly worked while receiving OWCP benefits without ever being investigated.  *E.g*., 0337 PFR File, Tab 4 at 7, 11, 35.  We discern no error in the administrative judge's excluding these witnesses based upon relevance.  0337 IAF, Tab 6 at 17-18; *see Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 4 (2011) (recognizing that administrative judges have broad discretion to control proceedings, including excluding evidence or witnesses that are not relevant or material to the issues of the case).  We also find that the appellant's inability to obtain testimony from D.B. and M.E. is no fault of the administrative judge.  The administrative judge approved both individuals as witnesses for the appellant, but the appellant failed to ensure their appearance.  0337 IAF, Tab 6 at 17.  He did not seek a subpoena for D.B.,[9] and although he did seek and receive a subpoena for M.E., he failed to serve it.  0337 IAF, Tabs 7-8; 0337 PFR File, Tab 4 at 7.

¶32    Finally, the appellant presents a number of claims that are not relevant for purposes of the appeals before us.  For example, he alleges that the agency failed to timely provide him the documentation he needed to collect unemployment benefits.  0337 PFR File, Tab 4 at 12.  He also argues that it was improper for a lien to be placed on his home to recover the OWCP benefits he previously received, and the agency's actions had an adverse effect on his ability to receive

---

[9] Although D.B. was the deciding official to the appellant's removal, and the agency had a subpoena to require her appearance, the agency did not seek to enforce the subpoena because D.B. was retired and too ill to appear.  0337 ID at 48 n.29.  Accordingly, the agency proceeded based upon the written record, and the administrative judge concluded that the appellant lacked standing to enforce the agency's subpoena. *Id*.

additional treatment from his physician. *Id*. at 24, 28. In addition, he claims that the agency announced his criminal conviction over loudspeakers at his office. *Id*. at 36. These matters are outside the Board's limited jurisdiction. *See generally Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985) (recognizing that the Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation).

## ORDER

¶33     We ORDER the agency to cancel the constructive and indefinite suspensions for the period April 2 to August 26, 2004. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶34     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶35     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶36     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition

should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶37        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.

| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc., with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.